240 S.W.2d 193 (1951)
WHITE
v.
HUTTON, Sheriff.
No. 21608.
Kansas City Court of Appeals, Missouri.
April 30, 1951.
*195 M. E. Ford, L. L. Livengood, Maryville, for petitioner.
John J. Robison, Maysville, for respondent.
DEW, Presiding Judge.
This is a proceeding in habeas corpus instituted in this court. Petitioner was adjudged in contempt by the Probate Court of DeKalb County, Missouri, for failing to comply with a judgment in a proceeding to discover assets of an estate, and ordered confined in jail until the petitioner deliver to the adminstratrix of the estate of petitioner's father the sum of $2,000.00 in cash, or until otherwise ordered released by the order of a court of proper jurisdiction.
On March 15, 1947, Hollis C. White, father of petitioner, died, a resident of DeKalb County, Missouri, after which his daughter Lydia Cleveland was appointed administratrix. The administratrix filed in the Probate Court her affidavit dated March 5, 1951, alleging that she has good cause to believe and does believe that Hollis Newcomb White in the state and county aforesaid has concealed or is otherwise wrongfully withholding certain property of the estate of the deceased, being particularly $2,000.00 in cash and currency; that said property is now in the possession of Hollis Newcomb White or under his control, and should be recovered for the estate of said deceased, and said Hollis Newcomb White should be cited and compelled to appear before the court and caused to answer such questions as may be propounded to him concerning such concealment or unlawful withholding of such property. The court thereupon issued its citation to the petitioner Hollis Newcomb White to appear before said court within the time fixed, and to answer such interrogatories as may be propounded "touching the concealment and possession of certain personal property described in the affidavit * * *". The interrogatories were attached to the citation and served on the petitioner. Ten interrogatories were propounded as follows:
"1- At the time of the death of the deceased was he not the owner of $2,000.00 in currency and cash which has been delivered to you for safekeeping?
"2- Did you have in your possession at the time of the death of the deceased $2,000.00, which was the property of and belonged to the deceased?
"3- Did not the deceased deliver to you on October 21, 1945 the sum of $2,000.00 in cash and currency for the purpose of you keeping the same for the deceased?
"4- Did you not deliver to the deceased a receipt in writing at Union Star, Missouri, signed by you in which you acknowledged the receipt of $2,000.00 in cash you had received from the said H. C. White for safe keeping?
"5- Did you not deliver to the deceased on October 21, 1945, at Union Star, Missouri, a receipt which you signed, acknowledging you have received the sum of $2,000.00 in cash from the deceased?
"6- If your answer to Interrogatory 6 above is `Yes' was not said property delivered to you by the deceased for the purpose for you to safely to keep same for deceased?
"7- If your answer to Interrogatory No. 5, be in the affirmative and your answer to No. 6 above be in the negative what was the purpose of said receipt and why was it executed to you?
"8- Did you receive the sum of $2,000.00 from H. C. White, the deceased on October 21st, 1945, which was the property of the deceased?
"9- Did you in the lifetime of the deceased deliver back to the deceased $2,000.00 you so received if your answer to Interrogatory No. 8 be in the affirmative?
"10- Do you now have in your possession $2,000.00 in curre cny and or cash which was delivered to you and owned by H. C. White, on October 21, 1945?"
The petitioner filed his verified answer to the interrogatories, answering "No" to all except 6 and 7, to which his answer was "No answer required".
*196 Judgment was entered on December 28, 1949, reciting the appearance of all parties, the waiver of a jury and that hearing had been had, and the taking of the cause under advisement by the court, and that on February 8, 1950, the court having had the same under advisement and being well advised in the premises, and having reviewed same, finds that the said H. N. White "has concealed, and now unlawfully is withholding the sum of $2,000.00 in cash which was the property of H. C. White in his lifetime and belongs to his estate. It Is Therefore ordered and adjudged that the said H. N. White, forthwith deliver to Lydia L. Cleveland, Administratrix, said sum of $2,000.00, and that the Administratrix have and recover of and from said H. N. White her costs and charges". The record next shows the following Order of Commitment:
"Now on this day comes the above named Administratrix in said estate and files her Petition praying for the attachment of the person of the said Hollis Newcomb White for failure to comply with the Judgment of this Court rendered on February 8, 1950, wherein the said Hollis Newcomb White was found to have concealed and was unlawfully withholding assets of the above estate, being $2,000.00 in cash, which was the property of the said H. C. White in his lifetime and belonged to said estate.
"Said Petition is taken up and found to be in proper form and evidence heard thereon, and the court finds that after a hearing in said Court on December 28, 1949, that the Court on February 8, 1950, entered a Judgment and finding against said Hollis Newcomb White adjudging him guilty of concealing and withholding $2,000.00 in cash, which was the property of the said H. C. White in his lifetime and then belonging to said estate, and that under said Judgment and Order, the Court as a part thereof directed the said Hollis Newcomb White to forthwith deliver to the said Lydia Cleveland, Administratrix, said property, and the Court further finds that the said Hollis Newcomb White has failed to comply with said Order and Judgment and has refused and is now refusing to so deliver said property, and that by reason thereof, he is, therefore, adjudged guilty of contempt of Court for such failure and refusal as provided by law, and the Court further finds from the records of said Court that the Judgment so rendered on February 8, 1950, being unappealed from, is now a Final Judgment.
"It is, therefore, ordered that the said Hollis Newcomb White be committed to the County Jail of the County of DeKalb and State of Missouri, and there kept in confinement until he delivers to the said Administratrix the property, to-wit: $2,000.00 in cash, or until otherwise ordered released by the order of a Court of proper jurisdiction.
"And it is, therefore, further ordered that a copy of this Judgment and Order of Commitment be delivered to the Sheriff of DeKalb County, Missouri, and that he execute the commitment of the said Hollis Newcomb White as provided by this Order and make due return thereof to this Court.
(S) Kirkpatrick Fitzgerald
(Seal)"
The proceedings were begun under Sections 63 to 66, inclusive, R.S.Mo. 1939, R.S.1949, §§ 462.400 to 462.430, the purpose of which is for the discovery and collection of assets belonging to the estate of a deceased person. Section 63 provides for an affidavit to be filed in the Probate Court by the representative of the estate or anyone interested therein to the effect that the affiant has good cause to believe and does believe "that any person has concealed or embezzled, or is otherwise wrongfully withholding any goods, chattels, money, books, papers or evidences of debt of the deecased, and has them in his possession or under his control," and upon the filing thereof the court may cite such person to appear before it and may compel attendance by attachment.
Section 64 provides that if such party does not admit the allegations of the affidavit he may be examined under oath along with other witnesses for and against such party provided there have been interrogatories filed in writing to be answered in writing by the party or parties cited.
*197 Section 65 provides that if such person cited refuse to answer proper interrogatories, the court may commit him to jail until he answer or be discharged in due course of law.
Section 66 provides that the issues determined by the interrogatories and the answers thereto shall be tried by a jury unless waived, and if waived, then by the court in a summary manner, and judgment shall be rendered according to the finding and for costs, and "if convicted, the court shall compel the delivery of the property detained by attachment of his person for contempt, and the court shall commit him to jail until he comply with the order of the court".
In the petitioner's application for a writ of habeas corpus he attaches the pleadings and record of the hearing, together with the interrogatories, the judgment, citation and commitment, and alleges that his imprisonment is unlawful for the reason that the judgment is illegal and void and rendered without warrant or authority of law; that no specific personal property was described in the affidavit or alleged to be concealed or withheld; that the judgment did not find that the petitioner had concealed any specific personal property, nor did the affidavit allege nor the judgment find that the petitioner now has or at the time of the filing of the affidavit, or at the date of the judgment had in his possession or under his control any specific personal property belonging to the estate of the deceased; that no issues are made by the pleadings; that if any issue is joined it is simply an action on debt for money had and received and the judgment is not responsive to any issue attempted to be raised by the pleadings, and that the purported judgment is in substance a money judgment but purports to be a judgment for specific personal property and is therefore void; that the judgment is beyond the scope of the pleadings, beyond the findings of fact, without the jurisdiction of the court and unwarranted by the pleadings and the evidence and therefore a nullity. The petition further alleges that the affidavit of the administratrix had been denied under oath; that the administratrix did not meet the burden of proof by tracing any personal property of the deceased into the hands of the petitioner, nor that any specific personal property, either in cash, stocks, bonds, notes or whatever it might be is now in the hands of the petitioner, and that the purported receipt introduced in evidence is denied by the petitioner, could not justify a finding that the petitioner had received any specific property, or that he holds any specific property in his possession, as such receipt could raise only a presumption of debt or gift from the deceased to the petitioner; that the statutes in question can apply only to a situation where specific personal property belonging to an estate is wrongfully held and concealed and is definitely traced into the hands of the wrongdoer, and cannot be made to apply to an ordinary debt or an ordinary gift, and an attempt to so apply the statute to such a situation would be unconstitutional, void and of no effect. He avers further his imprisonment is unlawful for the reasons stated, and that the commitment is void, based on an illegal judgment in violation of Section 10, Article 1 of the Constitution of Missouri, and Section 11, Article 1 of the Constitution of Missouri, in that the $2,000.00 ordered paid is neither a fine nor penalty imposed for the violation of the law, but is an obligation and debt claimed to be owed by petitioner to the estate, and his incarceration is therefore imprisonment for debt.
The return filed by the sheriff in this cause admits the custody and it is alleged to be by virtue of the attached writ of attachment issued by the Probate Court of DeKalb County, which has been issued by that court under a petition, also annexed, described in the application, and that "all other proceedings in said cause are attached to and made a part of the petition filed by the petitioner".
The answer to the return admits that he is being held under a purported commitment described in the return, and that it is founded upon the purported judgment described therein. The answer further reiterates the claim of the petitioner that the attachment, commitment, judgment and imprisonment were unlawful for the reasons *198 stated in his petition; that no commitment could legally be issued unless the court find he had in his possession or under his control the property belonging to the estate in order that he might comply with the judgment and order of the court and "that the issue made by the pleadings and the evidence is simply an action for debt or for money had and received, and no such action can be maintained; this Probate Court having no general jurisdiction". It is further alleged that the judgment is not responsive to any issue raised by the pleadings "nor is the purported judgment supported by the evidence * * *; that the only evidence offered in support of the affidavit was a receipt but the evidence failed to disclose if it was delivered to Hollis C. White during his lifetime or to anyone for his use or that he knew of the existence of said receipt; that said receipt is therefore of no effect and no judgment can be founded thereon. It further alleges that the said receipt is wholly insufficient to justify a finding on the part of said court that the petitioner had received any specific property or that he now holds any specific property in his possession or that he now has $2,000.00 in his possession or under his control, and that the receipt is wholly insufficient to warrant a judgment for debt or for any judgment whatsoever."
In his suggestions filed, the petitioner contends (1) that the commitment cannot be sustained even though the judgment upon which it is based is valid and binding; that (2) the evidence is wholly insufficient to sustain the judgment; (3) that the probate court was without jurisdiction to entertain this proceeding. In the treatment of these contentions he points out that the issues in the proceeding for the discovery of assets are fixed by the interrogatories and the answers thereto, Sec. 66; that no specific personal property is described in the affidavit or pleaded or sought by the administratrix; therefore, the commitment cannot be sustained; that even if the petitioner received the money for safekeeping, his denial that he received the same amounted to a conversion of the fund presumed to have been converted at the time received, and therefore long before the affidavit was filed in the probate court, thus making the penalty provisions inapplicable. He asserts that a finding that he had the specific money in his possession and control at the time of the judgment was a fact essential to the judgment and commitment; that the judgment in effect is no more than a general judgment for a "sum of money" due the estate, is therefore a mere debt, and imprisonment for debt violates the federal and state constitutions; that in a habeas corpus proceeding the court can and should inquire into the facts upon which the judgment relied on is founded; that there was no proof that the receipt offered in evidence and denied by petitioner was ever delivered to the deceased or even in his possession, or that he knew of its existence; that the receipt is only prima facie proof of payment and rebuttable by parol testimony that when a father delivers money to a child and takes a receipt, the presumption is that the payment was a gift or advancement, in the absence of proof to the contrary; that the administratrix must prove more than the fact that petitioner received the money, but that he received it as bailee and had no title to it but merely its custody, the title to remain in the father or bailor, and that the identical money was to be returned to the father. He argues that if the exact money claimed to have been received by him was not intended to be returned to the father, then the title to the money vested in the petitioner, whereby he would have become only a debtor of the estate and would not be withholding assets of the estate. The judgment, he again asserts, was not supported by the evidence and the court had no authority to render it nor to adjudge petitioner in contempt for refusing to obey an order to comply with it.
To support the return, on the other hand, the points are made that when a court has jurisdiction of the parties and the subject matter, a judgment thereon, unappealed from, even though erroneous, precludes a party from denying the status it produces; that judgments of a probate court are as conclusive as those of a court of *199 general jurisdiction and can only be attacked on matters of jurisdiction or fraud apparent on the face of the record; that proceedings to discover assets of an estate are not limited to specific property on hand at the time of the filing of the affidavit or at the time of the judgment, and judgment may be rendered for return of cash; that the judgment rendered was in proper form and contained all necessary recitals.
We have not set forth the evidence produced at the hearing upon the issues made by the interrogatories and answers thereto, a transcript of which is attached to the petition for our writ of habeas corpus and referred to generally in the return. Nor is there shown in the record before us what the evidence was on the hearing had on the petition of the administratrix for attachment of the person of Hollis N. White, referred to in the order of commitment. Whatever the purport of the evidence on either hearing, we refrain from considering it in the present proceedings and shall limit ourselves to consideration of the pertinent pleadings, interrogatories, answers thereto, orders and the judgments before us. As was said in Blattel v. Stallings, 346 Mo. 450, 142 S.W.2d 9, 13: "The judgments in the probate court were not questioned either by an appeal, or by exception or objections of anyone interested. Judgments of a probate court are presumed to be regular until the contrary is affirmatively shown, and the burden of so showing rests upon the party asserting the invalidity. Again such judgments are not subject to collateral attack. 34 C.J. 518, sec. 824. In Jones v. Peterson, 335 Mo. 242, 72 S.W.2d 76, loc. cit. 84, 85, (11-14), this court said: `As probate courts are established by organic law, the Constitution of Missouri, their judgments are entitled to the same credit and presumptions accorded to courts of general jurisdiction. Robbins v. Boulware, 190 Mo. 33, loc. cit. 43, 88 S.W. 674, 109 Am.St.Rep. 746'".
Furthermore, in habeas corpus proceedings we are enjoined by the provisions of Section 532.440 R.S.Mo.1949, from inquiring into the justice or propriety of any commitment for contempt made by any court according to law and plainly charged in such commitment, as therein provided, except that no person charged therein shall be prevented from his release when the matters alleged in the order of commitment shall not, in point of law, amount to a contempt.
We are aware of the decisions of the Supreme Court authorizing a broad scope of inquiry in habeas corpus proceedings based on commitments for contempt, wherein the conclusive effect and validity of only the judgment of commitment was the issue, or when, as in direct contempt, there is no appeal. Ex parte Creasy, 243 Mo. 679, 148 S.W. 914, 915, 41 L.R.A., N.S., 478; In re Howell and Ewing, 273 Mo. 96, 200 S.W. 65. In the case at bar, however, petitioner challenges the validity, not only of the judgment, or order of commitment, but of the prior judgment upon which it is based, as to both of which we are urged to inquire into the sufficiency of proof. We are also cognizant of Section 1617, R.S.Mo.1939, R.S.1949, § 532.320, which declares the right of any person seeking release from imprisonment under habeas corpus to "deny the material facts set forth in the return, or allege any fact to show, either that his detention or imprisonment is unlawful, or that he is entitled to his discharge; which allegations or denials shall be on oath". We are not convinced, however, that the statutes and authorities permit us to go to the extent of inquiring into the sufficiency of proof to support the judgment on which the order of commitment herein is based. The general rule is stated in 39 C.J.S., Habeas Corpus, § 26, page 491:
"The court, on habeas corpus, will not inquire into * * * matters of fact which were decided, or should have been decided, in the trial court; nor will it inquire into mere errors or irregularities affecting the judgment or sentence, or as to the weight and sufficiency of the evidence, at the trial, to support the conviction. The court cannot proceed to a hearing de novo on the merits of the conviction; it cannot go outside the record and hear evidence and determine issues of fact on the merits as to matters presented to the trial court, * * *". See, *200 also, Ex parte Rush, 305 Mo. 121, 264 S.W. 689; Kella v. Bradley, 229 Mo.App. 821, 84 S.W.2d 653. In the case before us we adhere to the above general rule, and consider solely the pertinent pleadings, interrogatories, answers thereto, and the orders and judgments as they appear on their face.
Several well settled principles of law must be borne in mind as we approach the consideration of the very vital question next confronting usthe legality of the petitioner's imprisonment, to be determined from the face of the record aforesaid. Judgments for contempt can be attacked in habeas corpus for want of jurisdiction of the court to render the particular judgment even though the court have jurisdiction over the person and subject matter. "`Nor can the court make contempt of that which is not contempt. And every attempt to do so would be in excess of authority or jurisdiction, as much so as if the court had no authority or power to punish for contempt, either in relation to the person or subject-matter. There must be contempt in order to justify punishment for that offense. "There are three essential elements necessary to render conviction valid. These are that the court may have jurisdiction over the subject-matter, the person of the defendant and the authority to render the particular judgment. If either of these essential elements are lacking, the judgment is fatally defective, and the prisoner held under such judgment may be released on habeas corpus"'". Ex parte Creasy, supra, 243 Mo. at page 690, 148 S.W. at page 920. Statutory enactments as to what shall constitute contempt should be strictly construed. 17 C.J.S., Contempt, § 8, page 10. Nor can any contempt charge be based on mere nonpayment of a money judgment. The punishment as for contempt of a judgment debtor for his refusal to obey a judgment has no application to judgments for the mere payment of money. Section 1268, R.S.Mo. 1939, Sec. 511.340, R.S.Mo. 1949. Imprisonment for debt would violate the federal and state constitutions, under the familiar provisions thereof not necessary here to cite. A commitment for indirect contempt must state the particular circumstances of the offense. Section 2031, R.S. Mo. 1939, Section 476.140, R.S.Mo. 1949. The conclusions of the court on the citation will not suffice. In contempt cases it is facts and circumstances which go to make the contempt which must be set forth and not the legal conclusions of the judge as to what are the facts and circumstances. Ex parte Creasy, supra, 243 Mo. at pages 702, 704, 148 S.W. 914. A commitment for contempt based on a void judgment is itself void. "It is useless to suggest authorities to the effect that a commitment issued upon a void judgment is not a valid commitment. Its value as a writ is destroyed by showing that a void judgment is its sole foundation". In Matter of Fowler, 310 Mo. 339, 351, 275 S.W. 529, 532.
The procedure under Sections 63-66, R.S. Mo. 1939, has for its purpose two objectives: The first is to discover assets of an estate. The second is to recover them expeditiously. If a sworn charge is made in the probate court that any person has concealed or embezzled or otherwise unlawfully is withholding any goods, chattels, money, papers or evidence of debt of the deceased, "and has them in his possession or under his control", then, under Section 63, the court may cite such person to appear and may compel his appearance by attachment, and, if such person does not admit the allegations of the affidavit, he is required to give written answers to written interrogatories, after which, at the instance of the administrator or executor, he and other witnesses may be examined under oath for and against such party. If the party refuse to answer the interrogatories, he may be committed until he does so. Under Section 66, the issues as made by the interrogatories and the answers thereto shall be tried to a jury, and if no jury is required, the court shall hear the matter in a summary manner and render a judgment according to the finding, and if such party be "convicted", the court may compel the delivery of the property detained, and may do so by attachment of such person for contempt, and shall commit him to jail until he comply with the order of delivery.
Because of our disposition of this case on other grounds we do not believe it necessary to determine whether the words in the *201 pleadings, judgment and order of commitment sufficiently met the requirements of the law as to the identity of the specific property alleged to be detained and ordered returned. Assuming such sufficiency in that respect for the purposes hereof, the grave question remains as to whether the order of the commitment or the judgment on which it was founded otherwise showed on its face any contempt under the law.
The procedure in this state for the delivery of assets of an estate has a history of well over a century and its development and construction may be read with great interest in the opinions of our courts. State ex rel. Lipic v. Flynn, 358 Mo. 429, 215 S. W.2d 446; In re Weingart's Estate, Mo. App., 170 S.W.2d 972. It was considered revolutionary in character, involving a sentence of contempt to enforce certain judgments thereunder. We shall confine our consideration to that part of the development of the statutory provisions and their construction as may tend to a better understanding of the meaning and effect of the provisions here involved.
We have before us the Revised Statutes of Missouri for 1835 and 1845. The pertinent sections in both those revisions provided for a sworn charge only of concealment or embezzlement of goods, etc. of the deceased, with provisions for interrogatories and conviction for "unlawfully detaining" such property, with consequent order to deliver to be enforced by attachment of the person of the party charged. Section 9-11, Article 2, Laws of Mo. 1835; Sections 9-11, Chapter 3, Article 2, Laws of Mo. 1845. Even in that form, the Supreme Court held that "it would seem quite obvious as well from the language, as the apparent design of the act, that this proceeding is not to be used where the person charged with unlawfully detaining the effects, has really no possession of or control over them, at the time the complaint is made against him. In such case, the attachment and imprisonment of his person cannot result in the delivery of the articles to the executor or administrator, and the imprisonment, if allowable at all, is allowable for his whole life. At least, it is easy to imagine a case in which a person has had in his possession property of a deceased person, and has so parted with the possession that it is utterly impossible he should ever regain it. If, in such case, he is to be imprisoned until it is delivered, he must be imprisoned for life."
In that case, where it appeared that if the party charged had ever had possession of the effects of the estate, he had parted with possession and could not deliver them, it was ruled that, therefore, "He was not liable to be proceeded against under the administration act". Dameron v. Dameron, 19 Mo. 317, 318.
The element of the present possession of the property by the party charged was considered so essential after the Dameron decision, that the Legislature, the following year, amended it further. State ex rel. Lipic v. Flynn, supra. That amendment added to concealment or embezzlement by such person charged, the words "and has them in his possession or under his control". In 1881 the procedure was further amended to the effect that the affidavit may allege "has concealed or embezzled, or is otherwise wrongfully withholding * * * and has them in his possession or under his control * * *".
Two related questions arose in the course of time under the sections as above amended, and with which we are here concerned. First, could there be any recovery in such proceedings for the value of the detained assets when they had been disposed of by the party charged? Second, can the contempt provisions of the statutes, Sec. 66, be imposed for failure to obey the order for delivery of the specific property alleged to have been detained when the property is, in fact, not in the possession or control of the party charged? The statutes, in the meantime, had been amended to provide that the issues made by the interrogatories and answers thereto, after proper affidavit, were the issues to be determined by the court. Sec. 66. It was held in Davis v. Johnson, 332 Mo. 417, 423, 58 S.W.2d 746, 748, that:
"It is manifest that the issues do not describe any specific property or money of which delivery in specie is sought; so that, for the moment, the provision of the statute which relates to delivery and the commitment of a defendant for his refusal to *202 deliver upon his conviction, may be laid out of view. Let it, then, be assumed that upon a trial it be found that the original defendants received certain moneys and other personal property belonging to the deceased testator, and had withheld and converted the same in an amount and value shown. Is there any reason why the court could not, as required by the statute, `render judgment according to the finding'? We know of none, and none has been pointed out. Such a judgment would determine finally the amount in which the estates of the deceased defendants were indebted to the estate of the testator, Gibson, at his death. Sexton v. Sexton, 295 Mo. 134, 243 S.W.315; Roelofson v. Whitten, (Mo. App.), 249 S.W. 688; Newell v. Kern, (Mo. App.), 218 S.W. 443. It would constitute an adjudicated and incontestable claim which could be filed and presented in the probate court to be classified against the estates of the deceased defendants. Marks v. Hardy, 86 Mo. 232, loc. cit. 235 (8). On the other hand let it be assumed that a finding that specific property was so withheld and was among the chattels of the defendants at their deaths, and afterward in the possession of their personal representative, the appellant. We see no reason why a trial might not be had in which the title to such property would be determined, or why upon a refusal of the appellant to deliver the same, the attachment feature might not be disregarded and a judgment for the value thereof entered as for conversion, or other judgment suitable to the finding and not involving commitment, to be classified in the same manner as in the other instance mentioned. Marks v. Hardy, 86 Mo. 232, loc. cit. 235". (Italics supplied.)
See, also, Clinton v. Clinton, 223 Mo. 371, 123 S.W. 1; Gordon v. Eans, 97 Mo. 587, 4 S.W. 112, 11 S.W. 64, 370; In re Estate of Huffman, 132 Mo.App. 44, 111 S.W. 848.
In the case of Newell v. Kern, Mo.App., 218 S.W. 443, 446, the court held generally that it is not necessary for recovery by the administrator that specific property alleged to have been detained, concealed or withheld be identified and awarded in specie. The Huffman case, 132 Mo.App. loc. cit. 64, 111 S.W. loc. cit. 854, conceded that the proceedings could not reach assets disposed of prior to the filing of the affidavit but that a money judgment could be rendered therefor for the amount of the property disposed of after the filing of the affidavit where the affidavit alleged that the party charged was either withholding the property or the proceeds therefrom.
It was ruled in the case of State ex rel. Lipic v. Flynn, supra, that a pending proceeding in a probate court between the same parties under the sections here in question, involves or may involve the same issues and seek the same relief as a later action in the circuit court for conversion and that, on motion, the latter would be dismissed. But the court said, 358 Mo. 437, 215 S.W. 2d 446, 450, that in the proceeding to discover assets, title to the disputed property may be tried; that a money judgment may be rendered for the value of the property detained if the party charged is found to have disposed of it after the charge was filed; that since the proceeding in the probate court was still pending, "that even if the relators here still retain possession of the disputed assets, and refuse to surrender them, Gertrude Wheeler, adm'x, may waive the attachment or punitive feature of the statute, Sec. 66, and ask a judgment for the value of the assets `as for conversion' in the discovery of assets proceeding".
Thus it appears that a judgment for the value of assets found to have been detained by the party charged in such proceeding may be rendered in accordance with the finding, and the punitive features of the statutes disregarded, if waived or made necessary by the findings, but there appears no authority for the application of the penalty for failure to comply with the judgment of the court for delivery of specific property or the value thereof, when there is no finding that the party charged has the same in his possession or control. If such a judgment under the conditions last described has any force or effect at all, which we do not here determine, it would be, at most, a mere judgment for debt, for the default of which no contempt and imprisonment could apply. If it purports to be a judgment to be enforced by *203 attachment and imprisonment as for contempt, then it lacks an essential element to make it so, namely the finding of present possession or control.
Despite the fact that the affidavit filed by the administratrix herein alleged that the money detained by the petitioner was "now in his possession or his control", and the further fact that Interrogatory No. 10 expressly introduced that issue into the proceeding, the court in neither its judgment thereon nor in its order of commitment found that essential fact; but, nevertheless, imposed the penalty of imprisonment to enforce delivery of the property, which the court did not find was then in petitioner's possession or under his control. The Legislature in its wisdom saw fit to prescribe the elements necessary for a proceeding against a person to discover assets of an estate, which would authorize a judgment, enforcible by imprisonment as for contempt. Among those elements required for such penalty is that the party to be charged with detaining the assets of an estate "has them in his possession or under his control". Whether the court finds that the person charged has concealed or embezzled or is otherwise wrongfully withholding such property, it is further expressly required that he "has them in his possession or under his control". In other words, the statutes do not attempt to enforce delivery of property on penalty of imprisonment for contempt by one who does not have such property in his possession or under his control. Contempt for failure to obey a judgment to deliver property must necessarily presuppose the possibility of compliance, and its essence is the willful, contemptuous and contumacious refusal to do so. Whatever may have been the reason why the court in the instant case did not determine that the petitioner had the property in his possession or under his control, the record does not disclose it, but the fact remains that the order of contempt is wanting in that essential element and is therefore void, and the judgment on which it is based is likewise invalid in the same respect, and to that extent. The result is that so far as this proceeding is concerned, the commitment for contempt and the judgment on which it is founded must be for naught held and without authority of law, making the imprisonment of the petitioner thereunder unlawful. The petitioner is discharged.
All concur.