STATE of Missouri ex rel. CITY OF
PACIFIC, Missouri, Relator,

v.

Winston V. BUFORD, Judge of the Thirty-
Seventh (37th) Judicial Circuit, sitting as
a Special Judge in the Circuit Court of
Franklin County, Missouri, in Cause No.
9948, Respondent.

No. 36549.

Missouri Court of Appeals,
St. Louis District,
Division One.

March 9, 1976.

James L. Anding, Pacific, for relator.

Charles M. Shaw, Clayton, for respondent.

RENDLEN, Judge.

Relator seeks prohibition to prevent respondent from proceeding on a motion to cite for contempt in a cause entitled "In the Matter of: P. H. Albertson, Cause No. 9948, in the Circuit Court of Franklin County." In that action the respondent, on February 16, 1974, reversed and held for naught the impeachment proceedings of relator, removing Albertson as City Marshal. Seeking enforcement of the judgment reversing the City's impeachment action, Albertson moved the respondent to cite relator for contempt "in and for its refusal to set aside and hold for naught its Acts of September 4, 1973 and December 6, 1973[,] suspending and removing Petitioner as Marshal of said City and thus not paying Petitioner's salary and emoluments and to punish Respondent City of Pacific for said contumacious refusal . . . ." For reasons we shall discuss, our preliminary writ of prohibition is made absolute.

The aldermen of relator, City of Pacific, sitting as a board of impeachment, heard charges and on December 6, 1973, ordered impeachment and removal of P. H. Albertson as Marshal of the City. Albertson petitioned the Circuit Court of Franklin County for judicial review of these actions. On February 16, 1974, the Circuit Court found the issues for petitioner and further found the City (relator here) had acted arbitrarily and capriciously, that its actions were unlawful and they were "held for naught." Pertinent portions of the order are as follows: "WHEREFORE, IT IS ORDERED, ADJUDGED AND DECREED that said acts by the City of Pacific on September 4, 1973, and December 6, 1973, are hereby set aside and held for naught; . . . ." Further the actions of the City were "not supported by competent and substantial evidence" and costs of the proceedings were taxed against the City.

Numerous procedural moves were undertaken by both sides including an appeal by the City which was abandoned on July 1, 1974, for the alleged reason that "P. H. Albertson was defeated in his bid for re-election to the position of City Marshal in the municipal elections of April 2, 1974" and the matter of their appeal was thus "moot."

Thereafter Albertson filed his motion to cite the City for contempt, alleging among other things the City of Pacific had contemptuously failed to pay the salary and emoluments due during the period of Albertson's suspension and for other relief. The City responded, filing suggestions in opposition to the contempt motion, and the court took cognizance of the proceeding. Relator then filed its petition for prohibition accompanied by suggestions in support; and on October 17, 1974, this court made its preliminary order prohibiting respondent from proceeding further in the cause.

We are aware that a writ of prohibition is an extraordinary remedy to be used with great care, *State ex rel. Eichorn v. Luten,* 515 S.W.2d 857, 859[1] (Mo.App. 1974); and generally the purpose of the writ is to prevent a lower court from acting without or in excess of its jurisdiction. *State ex rel. Vogel v. Campbell,* 505 S.W.2d 54, 58[7] (Mo. banc 1974).

Here, we must determine whether respondent has jurisdiction to adjudicate or grant the relief requested in the contempt proceeding. Before any adjudication could be made in such proceeding, "there must be jurisdiction of the person and of the subject matter, and *in addition the court must have jurisdiction to render the particular judgment in 'the particular case before it."* (Emphasis ours.) *State ex rel. Eichorn v.*

*Luten, supra* at 859[3]. Petitioner requests the court to hold relator in contempt for its alleged contumacious refusal to "set aside . . . its acts" thereby refusing to carry out the order of the court. In effect petitioner seeks contempt for the City's failure to take affirmative action; e. g., enactment of a repealing ordinance, when in fact no such affirmative action was required of the City by the judgment. No orders were directed to the City to enact any repealing ordinances; no finding or judgment was made directing the City to take specific action to reinstate Albertson. There was no judgment and no finding touching Albertson's entitlement to pay or emoluments for past or future services. No judgment for money was entered and nothing appears touching the value of services or similar aspects of the dispute.

■ By his contempt motion, Albertson would have the Circuit Court cite the City for contempt for "its refusal to set aside and hold for naught its [impeachment] acts . . . ." As we have previously noted, the judgment of the trial court does not call for such affirmative *acts* by the City; instead the court by *its own action* set aside and held for naught the impeachment proceeding. If in the contempt proceeding the court were to require such affirmative action, it would violate the established principle that "to support a charge of contempt for disobedience thereof, an order will not be expanded by implication in the contempt proceeding but must be so specific and definite as to leave no reasonable basis for doubt as to its meaning." *G— v. Souder,* 305 S.W.2d 883, 885[2] (Mo.App.1957). The court may not by implication include requirements not specified in the original judgment; and though suggested otherwise by petitioner, the record discloses no basis for the claim that the City was required to take the affirmative acts as Albertson would insist. If an act is not required, there can be no contempt for failure to perform it.

■ The remaining ingredient of the judgment which petitioner seeks to enforce by his motion to cite for contempt is pure and simple a claim for money, thus the motion calls for judicial actions in excess of jurisdiction. This is true for at least two reasons. First, the judgment makes no award of money and cannot now be expanded by implication in the contempt proceeding. *G— v. Souder, supra* at 885[2]. Second, assuming arguendo, the judgment of February 16, 1974, included an order for payment of money, the trial court would have no authority or jurisdiction to hold relator in contempt for failure to pay.

■ Section 511.340, RSMo 1969, provides for contempt as a mode of enforcing judgments with the specific exception in those cases of judgments for "the payment of money." Statutory enactments as to what shall constitute contempt are to be strictly construed and the court in *White v. Hutton,* 240 S.W.2d 193, 200[7] (Mo.App. 1951), construed § 511.340, RSMo 1949, (now § 511.340, RSMo 1969) as specifically exempting the nonpayment of a money judgment from contempt proceedings. The court stated: "The punishment as for contempt of a judgment debtor for his refusal to obey a judgment has no application to judgments for the mere payment of money . . . Sec. 511.340, RSMo 1949." To like effect is the statement in *White v. Fitzgerald,* 263 S.W.2d 454, 456 (Mo.App. 1953), in which the court discussing enforcement of a judgment for delivery of specific property or the value thereof, stated: "If such a judgment . . . has any force or effect at all . . . it would be, at most, a mere judgment for debt, *for the default of which no contempt and imprisonment could apply.*" (Emphasis ours.) Further, as stated by the court in *White v. Hutton, supra* at 200, "Imprisonment for debt would violate the federal and state constitutions, under the familiar provisions thereof not necessary here to cite."

Since the court has no authority to render the type of judgment requested, it would exceed its authority to proceed. This principle found expression in *White v. Hutton, supra* at 200, wherein the court stated: "Nor can the court make contempt of that which is not contempt. And every attempt to do so would be *in excess of authority or jurisdiction,* as much so as if the court had no authority or power to punish for contempt, either in relation to the person or subject-matter. There must be contempt in order to justify punishment for that offense." (Emphasis added.) The court further stated: "There are three essential elements necessary to render conviction valid. These are that the court may have jurisdiction over the subject-matter, the person of the defendant and the *authority to render the particular judgment.* If either of these essential elements are lacking, the judgment is fatally defective, and the prisoner held under such judgment may be released on habeas corpus." (Emphasis added.) *White v. Hutton, supra* at 200.

For the reasons stated, our preliminary writ of prohibition proscribing respondent from proceeding further in connection with Cause No. 9948 is made absolute.

WEIER, P. J., and DOWD, J., concur.