**Ex parte Stephen RYAN, Petitioner.**

**No. 11972.**

Missouri Court of Appeals,
Southern District,
Division Two.

Nov. 6, 1980.

Devon F. Sherwood, Sherwood, Honecker & Bender, Springfield, for petitioner.

James K. Justus, Forsyth, for respondent.

MAUS, Judge.

This proceeding in habeas corpus stems from *State ex rel. Stanhope v. Pratt,* 533 S.W.2d 567 (Mo. banc 1976) in which it was established that under the conditions therein defined a party who fails to pay maintenance or support as required by an order of the court may be held in contempt of court as provided in § 452.345.[1] The petition in this cause alleged that the petitioner was being held by virtue of an "Order of Contempt" and a capias warrant for arrest, a copy of the order and warrant being attached to and incorporated in the petition. The petition then set forth several reasons why that order and warrant were invalid and the petitioner was wrongfully re-

---

1. All statutory references are to RSMo 1978.

strained. Only by inference was it established that the alleged contempt was for non–payment of child support. Upon the return being made the matter proceeded to an immediate hearing, Rule 91.27, and by the pleadings and admissions of the parties the facts were settled "in a summary way". Rule 91.30. Briefly stated, those facts are that the petitioner was being held for such nonpayment by virtue of the order of contempt and warrant attached to the petition. For the reasons hereinafter stated, no legal cause was shown for the petitioner's restraint and he was ordered discharged, Rule 91.31, with this opinion to follow.

■ This case presented for consideration the requirements for a valid judgment of civil contempt and commitment for such contempt and a determination of the scope of review of such proceedings in a habeas corpus action. The power to punish for criminal and civil contempt is inherent in courts of record. *State ex inf. Crow v. Shepherd*, 177 Mo. 205, 76 S.W. 79 (banc 1903); *State ex rel. Girard v. Percich*, 557 S.W.2d 25 (Mo.App.1977). Section 476.110 delineates certain acts of *criminal contempt*. While trial courts have no authority to find a party in contempt under that section for such nonpayment, "[w]e rule, however, that the trial courts have inherent authority to adjudicate *civil contempt* proceedings in cases such as the one before us". *State ex rel. McCurley v. Hanna*, 535 S.W.2d 107, 108 (Mo. banc 1976). (Emphasis Added). The requirements for a valid judgment of contempt and a valid commitment for contempt may vary according to the type of contempt involved. The same is true of the scope of review of contempt proceedings in a habeas corpus action.

■ Contempt proceedings are subject to classification in two respects. Contempt may be criminal or civil and it may be direct or indirect. *Curtis v. Tozer*, 374 S.W.2d 557 (Mo.App.1964). The distinction between criminal contempt and civil contempt is not always clear and "[t]here can

be contempts in which both civil and criminal elements appear". *State ex rel. Jarboe v. Holt*, 444 S.W.2d 857, 860 (Mo. banc 1969).[2] An extended discussion of what characteristics distinguish criminal contempt from civil contempt is not necessary for this opinion. In general "[w]hile the primary purpose of civil contempt is to protect the parties to the litigation for whose benefit the order was issued, the primary purpose of criminal contempt is to protect, preserve and vindicate the power and the dignity of the law itself". *State ex rel. Girard v. Percich*, supra, 557 S.W.2d at 36. Also see, *State ex rel. Stanhope v. Pratt*, supra. Another related distinction is the difference in the purpose to be served by any confinement imposed as a result of the contempt. In criminal contempt such punishment is for the purpose of protecting the dignity of the court and the authority of its decrees. In civil contempt, "[i]ts function is to provide a coercive means to compel the other party to the litigation to comply with relief granted to his adversary. The civil contemnor [sic] has at all times the power to terminate his punishment by compliance with the order of the court–i. e.: purging." *Mechanic v. Gruensfelder*, 461 S.W.2d 298, 304 (Mo.App.1970). Also see *State ex rel. Stanhope v. Pratt*, supra; *In re Marriage of Vanet*, 544 S.W.2d 236 (Mo.App.1976). The distinction between direct and indirect contempt is easier to draw. "A direct contempt is one that occurs in the presence of the court or so near as to interrupt its proceedings. ... Constructive or indirect contempt arises from matters not transpiring in court but which go to degrade or make impotent the authority of the court or to impede or embarrass the administration of justice." *Curtis v. Tozer*, supra, 374 S.W.2d at 568. It is clear the asserted contempt in this case is that of indirect, civil contempt. *Teefey v. Teefey*, 533 S.W.2d 563 (Mo. banc 1976).

■ Even though the power to punish for contempt is inherent, it has been and is

---

**2.** In *Mechanic v. Gruensfelder*, 461 S.W.2d 298, 305 (Mo.App.1970) it was said: "Where both forms of contempt are present the proceeding takes on the cloak of the criminal proceeding and is governed by the rules pertaining to it".

the subject of statutory enactment[3] and Supreme Court Rule. Section 476.110 and Rule 36.01 are by their terms applicable to criminal contempt. *State ex rel. McCurley v. Hanna*, supra. Rule 36.01(a) adopts the common law rule that a judgment of direct criminal contempt must recite the facts and circumstances constituting the contempt. *Ex parte Brown*, 530 S.W.2d 228 (Mo. banc 1975). Rule 36.01(b) makes it clear this requirement extends to judgments of indirect criminal contempt. *Ex parte Neal*, 507 S.W.2d 674 (Mo.App.1974). Both statute, § 476.140, and rule, Rule 36.01, expressly require that in the case of criminal contempt, both direct and indirect, the order of commitment[4] shall recite the facts constituting the contempt and fixing the punishment.[5] *Vokolek v. Carnes*, 512 S.W.2d 112 (Mo. banc 1974).

While §§ 476.110 to 476.150 deal with criminal contempt, they have been frequently cited as applicable to civil contempt.[6] *White v. Hutton*, 240 S.W.2d 193 (Mo.App.1951); *Ex parte Harris*, 286 S.W. 401 (Mo.App.1926); *Ex parte Devoy*, 208 Mo.App. 550, 236 S.W. 1070 (1921). Al-

though it is not the universal rule, 17 C.J.S. Contempt § 86(5), pp. 248–252, it has been held that in civil contempt the judgment of contempt must set forth the facts and circumstances upon the basis of which the contemner was determined to be in contempt. "In contempt cases, the facts and circumstances constituting the contempt should be recited in the judgment." *Ex parte Fuller*, 330 Mo. 371, 378, 50 S.W.2d 654, 657 (banc 1932).[7] Also see *In re Marriage of Vanet*, supra; *White v. Hutton*, supra. It is also clear that in civil contempt the order of commitment should set forth those facts and circumstances. Indeed, if the civil contemner "carries the keys of his prison in his own pocket," *Curtis v. Tozer*, supra, 374 S.W.2d at 570, it is essential that there be a judicial declaration of the facts and circumstances constituting the contempt so that the contemner may purge himself. *In re Marriage of Vanet*, supra. That the order of commitment must contain such a statement is supported by Rule 91.32 which provides that a party shall be remanded if he is in custody "(3) for any contempt, specially and plainly charged in the commitment . . . ."[8] In order that this

3. In *State ex inf. Crow v. Shepherd*, 177 Mo. 205, 235, 76 S.W. 79, 88 (banc 1903), it was held that "the Legislature has no power to take away, abridge, impair, limit, or regulate the power of courts of record to punish for contempts", but that reasonable regulation would be enforced as a matter of comity. In *Ex parte Hough*, 544 S.W.2d 333 (Mo.App.1976) the requirements of the statutes were said to be mandatory.

4. The terminology might well be *warrant of commitment*. " 'A commitment is a warrant, order, or process by which a court or magistrate directs a ministerial officer to take a person to prison, or to detain him there.' " *Reardon v. Frace*, 344 Mo. 448, 451, 126 S.W.2d 1167, 1168 (banc 1939). Also see *Vokolek v. Carnes*, 512 S.W.2d 112 (Mo. banc 1974); *In re Marriage of Vanet*, 544 S.W.2d 236 (Mo.App. 1976).

5. "Furthermore, in a contempt case the facts and circumstances constituting the offense, and not simply the legal conclusions of the court, should be recited in the judgment and likewise in the commitment." *G____ v. Souder*, 305 S.W.2d 883, 887 (Mo.App.1957). The absence of the required recital in a commitment for criminal contempt is not cured by a proper recital in the judgment of contempt. *Vokolek*

*v. Carnes*, supra, n. 4; *Ex parte Neal*, 507 S.W.2d 674 (Mo.App.1974). Nor is a defective judgment cured by a commitment containing the required recitals. *Ex parte Brown*, 530 S.W.2d 228 (Mo. banc 1975).

6. This is no doubt proper as the statutes have been found to be declaratory of the common law. *Reardon v. Frace*, supra, n. 4.

7. *State ex rel. Duddy v. Lasky*, 451 S.W.2d 352 (Mo.App.1970) *seems* to hold that when the judgment of contempt is for the payment of a fine only, it need not set forth the facts and circumstances.

8. In order that this rule does not spell out the exclusive basis upon which an alleged contemner, whether civil or criminal, may be discharged, it must be considered with Rule 91.34. The latter rule provides that one in custody may be discharged, among other reasons, "(1) where the jurisdiction of such court or officer has been exceeded, either as to matter, place, sum or person;" and "(3) where the process is defective in some matter of substance required by law, rendering such process void . . .". Also see Rule 91.35 which was extensively considered in *Curtis v. Tozer*, 374 S.W.2d 557 (Mo. App.1964).

opinion may not be misunderstood, this court holds that in civil contempt the facts and circumstances upon the basis of which the contemner is adjudged to be in contempt must be set forth in the judgment finding the contemner in contempt and in the commitment for his contempt.

■ The second point for resolution is whether or not the alleged defects in the judgment of contempt and commitment may be considered in this habeas corpus action. By a long line of authority, it is established that there is no right of appeal from a judgment of criminal contempt. *Chemical Fireproofing Corp. v. Bronska*, 553 S.W.2d 710 (Mo.App.1977); *State ex rel. Wendt v. Journey*, 492 S.W.2d 861 (Mo.App. 1973).[9] However, the validity of the judgment and commitment may be challenged in a habeas corpus proceeding, *Ramsey v. Grayland*, 567 S.W.2d 682 (Mo.App.1978), and such review extends not only to the face of the record, but to a review of the evidence to determine if the judgment is supported by that evidence. *State ex rel. Girard v. Percich*, supra; *Ex parte Neal*, supra.

■ However, it is equally well settled that an appeal lies from a judgment of civil contempt. *Teefey v. Teefey*, supra, 533 S.W.2d 563; *State ex rel. Chicago B. & Q. R. Co. v. Bland*, 189 Mo. 197, 88 S.W. 28 (banc 1905); *In re Blankenship*, 553 S.W.2d 307 (Mo.App.1977). Of course, the contemner can be let to bail pending the determination of the appeal and that bail should be reasonable. *Teefey v. Teefey*, supra. Habeas corpus cannot be used as a substitute for appeal. *Threlkel v. Miles*, 320 Mo. 1140, 10 S.W.2d 953 (banc 1928). This maxim has been suggested to bar any review of a judgment of or commitment for civil contempt in habeas corpus. However, this does not follow. It is clear that in respect to civil contempt habeas corpus cannot be used to review the sufficiency of the evidence. *Threlkel v. Miles*, supra. But, both reason and a long line of authority compels the conclusion that in habeas corpus the legality of the civil contemner's restraint may be considered insofar as that can be determined from the face of the record. *Hernreich v. Quinn*, 350 Mo. 770, 168 S.W.2d 1054 (banc 1943); *Fleming v. Fleming*, 562 S.W.2d 168 (Mo.App.1978); *White v. Hutton*, supra, 240 S.W.2d 193. Compare *In re F____ C____*, 484 S.W.2d 21 (Mo.App. 1972) involving an attack upon a juvenile court commitment by habeas corpus. This conclusion is supported by Rule 91.35 which in part provides, "nothing in these Rules contained shall be so construed as to prevent any prisoner from being discharged when the matter alleged in the order of commitment shall not, in point of law, amount to a contempt".

*Teefey v. Teefey*, supra, holding that a conviction for civil contempt is subject to a full review on appeal, does not hold that habeas corpus is not available for an immediate, more limited review. In apparently speaking of *Teefey*, the Supreme Court continued to recognize that means of a more limited review in saying: "Moreover, *in addition to relief by habeas corpus*, we have ruled that such a judgment may be reviewed by appeal." *State ex rel. McCurley v. Hanna*, supra, 535 S.W.2d at 109. (Emphasis Added). *In re Marriage of Vanet*, supra, does not hold to the contrary, for in that case the moving party conceded the husband had purged himself of contempt. In *State ex rel. McCurley v. Hanna*, supra, a writ of prohibition was directed toward a proposed judgment of contempt based upon nonpayment of child support. At the time the writ was issued *Coughlin v. Ehlert*, 39 Mo. 285 (1866) appeared to bar the entry of such a judgment of contempt. However, by the time the case was considered by the Supreme Court, *Coughlin* had been overruled by *State ex rel. Stanhope*. The provisional rule was quashed with directions that if the moving party wanted to proceed, the trial court should "hold another hearing to determine relator's present financial condi-

---

**9.** In *Chemical Fireproofing Corp. v. Bronska*, 553 S.W.2d 710 (Mo.App.1977), the court on appeal reviewed a finding of contempt and the imposition of a fine to the extent of determining it was properly criminal and not civil contempt.

tion and the amount paid, if any, since the prior hearing. At the conclusion of that hearing the court should enter appropriate findings and judgment determining whether or not relator is guilty of civil contempt." *State ex rel. McCurley v. Hanna*, supra, 535 S.W.2d at 109. That case does not hold that a court in a habeas corpus proceeding cannot examine the face of the record to determine if the judgment of contempt was legally entered and if the commitment meets the requirements of the law. In fact, by the language referred to above, that case has clearly implied that such limited review is yet available in habeas corpus. This court holds that such review is available.

■ In this case the "Order of Contempt" merely recited that the petitioner had failed to purge himself of contempt as directed by a prior order and directed that "the petitioner should begin to serve his contempt sentence." It then directed the issuance of an alias capias warrant. This court need not consider to what extent prior orders and pleadings may be incorporated into a judgment of contempt as no prior order was tendered. The warrant referred to is merely an arrest warrant (Supreme Court Form No. 21) directing any peace officer in the state of Missouri to arrest the petitioner who is charged with contempt of court and to bring him forthwith before the court. Neither the order nor the warrant established legal cause for the restraint of the petitioner and he was discharged therefrom.

BILLINGS, P. J., and HOGAN, J., concur.