Charles M. Oliver, Respondent, v. Allen C. Orrick, Arthur J. Freund, Henry Kortjohn, and Frank L. Magoon, Appellants.*

St. Louis Court of Appeals. Opinion filed December 7, 1926.

**1.—Appeals—Contempt—Violation of Injunction—Appeal Lies.** An appeal lies from a judgment finding defendants guilty of contempt of court in violating an order of injunction restraining defendants, police officers, from interfering with the operation of a carnival device.

**2.—Contempt—Violating Injunction—Evidence—Review on Appeal.** The character of the contempt governs to some extent as to just what extent a reviewing tribunal may go in passing upon the evidence in a conviction for contempt for violating an injunction and what matters may be considered on appeal.

**3.—Same—Same—Same—Same—Civil Action—Equity—Appellate Practice.** If defendants, police officers, were guilty of contempt in violating an order enjoining them from interfering with the operation of a carnival devise, the contempt would be of a **quasi**-criminal character, but, for the purposes of appeal, such a contempt proceeding is treated as civil in character, because, if it were treated as a criminal contempt no appeal would lie, and, on appeal, in order to preserve the **status quo** as between the rights of plaintiff and defendants in the injunction suit, the case should be reviewed in the appellate court as one in equity.

**4.—Injunctions—Police Officers—Contempt—Order Enjoining Interference With Carnival Device—Indefinite—Conviction for Contempt Not Warranted.** Where the order for injunction prevented the defendants, as police officers of the city of St. Louis, from interfering with any device operated by plaintiff at his carnival "which was not a gambling device," and no device of any kind was specifically mentioned in the order, **held** defendants cannot be convicted as for contempt of court in violating the order which the court issued because of its vagueness, indefiniteness and uncertainty.

**5.—Same—Same—Same—Criminal Laws—Enjoining Enforcement.** Courts should be very slow in granting injunctive relief and restraining police officers from attempting to enforce the criminal laws, except in extreme cases, for usually the alleged injured party has an adequate remedy by way of defense in the criminal prosecution if there is one, but if such officers are becoming oppressive, or interfering with the lawful rights of a citizen, and no other adequate relief can be had, no hesitancy should be felt in granting such relief.

**6.—Same—Order Should be Specific to Warrant Conviction for Contempt.** In order to convict one for contempt for an alleged violation of an order of injunction, which order attempts to restrain police officers from making an arrest for what they may honestly believe to be a violation of the criminal laws of the State, such order should be clear and specific and leave no room for doubt or uncertainty as to its meaning in the minds of those to whom it is directed.

*Corpus Juris-Cyc. References: Contempt, 13CJ, p. 15, n. 32; p. 102, n. 82; p. 104, n. 23; p. 155, n. 25; Injunction, 32CJ, p. 279, n. 56; p. 282, n. 14; p. 369, n. 52.

Appeal from the Circuit Court of the City of St. Louis—Hon. Victor J. Falkenhainer, Judge.

REVERSED AND DEFENDANTS DISCHARGED.

*Jesse W. Barrett* and *Oliver Senti,* First Associate City Counselor, for appellants.

(1) The court erred in finding as a matter of fact that the game operated by plaintiff was not a game of chance and the judgment is against the evidence and the weight of the evidence. (a) Plaintiff's evidence clearly proved: (1) that one who had never played the game would have to guess as to the different factors which entered into the force to be used to make the automobile stop at a given point (viz.: resilience of the rubber bands, weight of the car, etc., etc.). (2) That the inventor of the game, although operating it from the time of its inception had not yet become expert and skillful enough to control the automombile in such a way as to make it stop at a given point. (3) . That no one ever could by skill cause the automobile to stop at a given point on the board on which it ran if the board was not level. (b) Defendant's evidence proved the board was out of level at the time of the arrest for which the second citation was issued. (2) The court erred in finding as a matter of law that the game operated by plaintiff was not a gambling device. (a) This was a gambling device or game because the test is whether there is an element of chance; and if there is, the presence or inclusion of an element of skill is immaterial. State v. Jackson, 39 Mo. 420; Canton v. Dawson, 71 Mo. App. 235; State v. Flack, 24 Mo. 378; State v. Sutton, 24 Mo. 380; State v. Charlis, 24 Mo. 379. (b) The playing of this game was betting on a gambling device. The player was offered an uncertain chance of getting something for nothing and the fact he would always get something (here a bar of chocalate) does not take the game out of the rule. Moberly v. Deskin, 169 Mo. App. 672; State v. Turlington, 200 Mo. App. 192. (c) Even if the game or device in question by itself had been harmless, the way it was being used constituted gambling. State v. Leaver, 171 Mo. App. 371; State v. Jackson, 39 Mo. 420; Canton v. Dawson, 71 Mo. App. 235; State v. Flack, 24 Mo. 378; State v. Sutton, 24 Mo. 380; State v. Charlis, 24 Mo. 379. (d) The court's language, "I believe that this sort of game ought to be permitted." "These little games of amusement in a measure all require some amount of skill. It looks to me they are harmless amusements and they ought to be permitted. We ought not make a hick town of St. Louis. Now that is how I feel," shows the trial court's mistaken theory as to the law and his conception that if the elememnt of skill entered into the game the game was not a game of chance. (3) The court erred in finding that the defendants violated the terms of the temporary injunction. The temporary injunction enjoined interference with games not gambling

devices, thereby expressly excepting those which were gambling devices or used as such. This game was a gambling device and therefore outside of the injunction. State v. Jackson, 39 Mo. 420; Canton v. Dawson, 71 Mo. App. 235; State v. Flack, 24 Mo. 378; State v. Sutton, 24 Mo. 380; State v. Charlis, 24 Mo. 379; Moberly v. Deskin, 169 Mo. App. 672; State v. Turlington, 200 Mo. App. 192; State v. Leaver, 171 Mo. App. 371. (4) The court erred in issuing a temporary injunction. The statutes and ordinances under which the police were acting were penal statutes. To restrain the enforcement of the penal statute is exceptional. Equity furnishes such relief only when the particular cause of action combines, (1) an unconstitutional law; (2) facts that would cause irreparable injury if a prosecution were permitted, and (3) the absence of an adequate remedy at law for the loss. Merchants Exchange v. Knott, 212 Mo. 646; State ex rel. v. Wood, 155 Mo. 445, 449; 5 Pomeroy Equity, sec. 2065; State v. Hall, 250 S. W. 65; Osborn v. Charlevoix, 72 N. W. 962 Kleinke v. Oats, 153 N. W. 675. Here it was not alleged in the petition that any of the laws or ordinances under which the police were acting were unconstitutional, nor was it alleged or proved that plaintiff was without an adequate remedy at law. On the contrary, defendants pleaded their solvency and their ability to pay any judgment recovered. (5) The judgment is against the law. (a) The statute of Missouri and the ordinances of the city of St. Louis make it unlawful to bet on any gambling device. Sec. 3538, R. S. 1919; Secs. 640 and 641, Revised Code of St. Louis, 1914; Canton v. Dawson, 71 Mo. App. 235. (b) It was the particular duty of the police board of the city of St. Louis to suppress gambling. Sections 8967 and 8953, R. S. 1919. (6) Plaintiff's own evidence demonstrated that defendants did not violate the court's injunction, but on the contrary obeyed the laws and ordinances directing them to suppress gambling.

*Otto F. Karbe* and *Albert E. Hausman* for respondent.

*Foristel, Mudd, Hezel & Habenicht* of counsel.

(1) A prosecution for a contempt, although the occasion and immediate cause for it arose in the course of the trial of an action in the court where the contempt proceedings are conducted, is a separate and distinct action and is not dependent upon the action in which the occasion for it arose. The law is so stated in 13 C. J., sec. 80, page 56, to which statement the author collects and cites the full current of American Decision Law, from which we call particular attention to the following cases: First Congregational Church v. Muscatine, 2 Iowa, 69; McDermott v. Clary, 107 Mass. 501; State v.

Mathews, 37 N. H. 450; Passmore Williamson case, 26 Pa. St. 9, 19; Hight v. Lucia et al., 36 Wis. 355, 360. (2) · From a prosecution and conviction of a direct contempt there is no appeal and the writ of *habeas corpus* is the only remedy for the prisoner. State ex rel. v. Bland, 189 Mo. 197; In re Ewing and Howell, 273 Mo. 96. (3) Before there may be a commitment for an indirect contempt, there must be a trial conducted according to the course of the common law. Ex parte Nelson, 251 Mo. 63. (4) Except on *habeas corpus* from a commitment for a direct contempt, the facts found by the court and recited in the judgment of commitment import absolute and conclusive verity. 1 Baily on Jurisdiction, sec. 73, page 265; Church on Habeas Corpus, sec. 340, page 469; Tinsley v. Anderson, 171 U. S. 101, 43 L. Ed. 91; Ex parte Creasy, 243 Mo. 667; Ex parte Heffron, 179 Mo. App. 640; Re Ewing & Howell, 273 Mo. 96; State ex rel. v. Bland, 189 Mo. 197; Ex parte Jack v. Jack, et al., 295 Mo. 128; Ex parte Gounis, 304 Mo. 428; Hartman v. Henry, 280 Mo. 478. (5) Because the defendants did not, at the trial, demur to the evidence or in any manner challenge the sufficiency of the evidence to raise an issue of fact, contempt or no contempt, the point may not be considered here. Crum v. Crum, 231 Mo. 615; Torrence v. Prior, 210 S. W. 430; Marsh v. Davis, 251 S. W. 390; (6) The grounds of the motion for new trial do not allege error· for that there was no evidence on the issue, contempt or no contempt. Fitzroy v. Bank, 234 S. W. 865; Phillips v. Dockins, 234 S. W. 1022; Reifeisen v. Young, 183 Mo. App. 508; State v. Scott, 214 Mo. 257. (7) But even if that ground had been properly laid in the motion, it were nevertheless futile, because it is no part of the function of a motion for a new trial to initiate grounds of alleged error competent for review on appeal; but the motion may only assemble and bring forward as errors, rulings to which exceptions have already been duly saved before and during the course of the trial. Reese v. Fife, 279 S. W. 415. (8) The defendants having submitted to the court the issues on the pleadings and the proofs without saving any exceptions and without any challenge of the sufficiency of the evidence by demurrer or otherwise are now estopped here to contend that the verdict and judgment are without the support of evidence. Kenefick v. Ins. Co., 205 Mo. 294; Bradley v. Becker, 296 Mo. 548; Green v. Term, R. R. Ass'n, 211 Mo. 18; Clelland v. Clelland, 291 Mo. 312; Schindler v. Producers Grain Co., 237 S. W. 124; Felty v. Dunlap, 203 S. W. 651; Williams v. Barnes, 215 Mo. App. 354. (9) This court may look at the proceeding in the injunction case, only so far as "to ascertain whether it was *coram judice*," and inquiry into the merits of the order or decree will not be allowed. 13 C. J., page 80, sec. 116; State v. Horner, 16 Mo. App. 191; Ex parte Jack, supra; Ex parte Gounis, supra; Hartman v. Henry, supra. (10)

Historically the process in contempt and the exercise of the power to punish·for contempt antedated the establishment of courts of equity or the equity jurisdiction. Ex parte Crenshaw, 80 Mo. 447.

NIPPER, J.—The plaintiff in this case is an operator of carnivals in and about the city of St. Louis, and the defendants are members of the Board of Police Commissioners of the city of St. Louis. The defendants were fined for contempt of court, and bring the. case here on appeal. A history of the litigation out of which the contempt case arose, and the proceedings leading up to the finding of the defendants guilty of contempt, may be stated as follows:

The·plaintiff brought an injunction suit, in which he alleged that he had leased various lots of ground in the city of St. Louis, for the purpose of operating carnivals and exhibitions, and had invested thousands of dollars in equipment and apparatus to furnish amusement to his patrons; that he had paid a license for the right and privilege of operating said carnivals and exhibitions, and had installed and placed on a certain lot in the city of St. Louis, a great quantity of equipment and apparatus, which were not gambling devices, and which .were placed there to furnish and provide amusement to his patrons; that the defendants notified plaintiff that he would not be permitted to operate said carnival in St. Louis on a lot he had provided for that purpose, which carnival and exhibition was in all respects identical with carnivals and exhibitions which plaintiff had operated in the city of St. Louis for the past five years, and that he had never been advised that the operation of said carnival was in any respect contrary to any law or ordinance.

Plaintiff also alleged that he had complied with all the laws of the State of Missouri and ordinances of the city of St. Louis, and that if he was not permitted to operate said carnival and exhibitions he would be deprived of his property and means of livelihood without due process of law, and subjected to great and irreparable damage; that plaintiff would be without adequate remedy unless the court as a court of equity would restrain defendants from in any way preventing or interfering with the operation of said carnival or exhibition.

Plaintiff asked for a temporary restraining order and a temporary injunction, enjoining and preventing the defendants from interfering with the operation of his carnival.

The defendants were ordered to appear on the fourteenth day of April, 1925, and show cause why a temporary injunction should not be granted. In the meantime the defendants were enjoined and restrained from interfering with the operation of the carnival operated by plaintiff.

The return of defendants to the order to show cause stated that the petition did not state a cause of action; that the plaintiff was not

entitled to the aid or protection of a court of equity; that the court had no authority to restrain an arrest for violation of the law; that to grant relief would be to violate the letter and spirit of the laws of Missouri, and substitute the discretion of the court for the discretion lodged by law in the defendants and individual officers subordinate to them; that the plaintiff had an adequate remedy at law by an action for damages; that the defendants had no intention of interfering with the lawful operation of such amusement, but that the so-called "carnival" operated by the plaintiff included gaming devices, roulette wheels, and other gambling devices forbidden by the statutes of Missouri and the ordinances of the city of St. Louis, and that defendants were doing only such acts as it was their duty to do.

Upon a hearing to show cause, the court granted a temporary injunction as prayed for in the petition, conditioned upon the plaintiff's giving bond, which was accordingly done. This injunction order enjoined the defendants and all those working under them in any police capacity from interfering with the erection, maintenance, or operation of plaintiff's carnival, or any device, machine, apparatus, or amusement equipment "which is not a gambling device," or from interfering with any person patronizing the carnival or exhibition or any department thereof "which is not a gambling device."

Thereafter, the plaintiff filed an application for a citation, requiring the defendants to show cause why they should not be punished for contempt. The application set out the facts heretofore stated, and that a temporary injunction had been granted; that defendants, in violation of said temporary injunction, acting through certain police officers of the city of St. Louis, did, on the seventeenth of April, 1925, come upon the premises occupied by said carnival and exhibition, and arrest one of plaintiff's employees who was at the time in charge of and operating a device known as an automobile game, which was not a gambling device, but a game wherein the patron, for a certain stipulated price, is permitted to roll a toy automobile against a rubber buffer or cushion, which causes the said automobile to rebound upon the same track upon which it is propelled, and the patron is entitled to receive articles of merchandise placed opposite that portion of the track upon which said automobile stops; that said game is not a gambling device, but a game of skill. As a further ground for citation, plaintiff alleged that these officers had threatened to arrest any and all persons found upon the. grounds occupied by said carnival who were in any way operating certain games and devices operated by plaintiff.

Defendants, for their return to the order to show cause why they should not be fined for contempt, allege, among other things, that the petition of plaintiff showed upon its face that the defendants had

not violated the terms of the injunction; that the acts of which plaintiff complained were performed in the discharge of their legal duties imposed upon each of them as members of the police force of the city of St. Louis. They admit that through certain officers the arrests were made, but that the devices which plaintiff was operating was a gambling device. They denied that they had threatened to interfere with the operation of or stop certain other games which plaintiff mentioned in his petition; that the court was without any authority to issue an injunction in the case. A hearing on said citation was had on May 7, 1925. The court heard the evidence, and took the cause under advisement, after which it rendered the following judgment:

"The plaintiff's application for a citation for contempt against the defendants having been tried by the court on the 7th day of May, 1925, and having on said last mentioned date been by the parties hereto submitted to the court upon the return of defendants to the order to show cause, the evidence and proof adduced, and having been taken under advisement, and the court now at this day being fully advised of and concerning the premises, doth find that on April 14, 1925, the defendants and each of them, and any person working under, for, through or at their direction, in any police capacity whatsoever, were enjoined and restrained, until further order of the court, from interfering with the erection, maintenance or operation of plaintiff's carnival or exhibition, or any part thereof, or any device, machine, apparatus or amusement equipment which is not a gambling device, or from interfering with any person patronizing said carnival or exhibition or any division thereof which is not a gambling device; and the court doth further find that the defendants and each of them, acting by and through Sgt. Mulcahy, Officer Charles McKenna and Officer Anton Riek, did on Saturday, April 25, 1925, come upon the premises occupied by the carnival and amusement exhibition of the plaintiff, Charles M. Oliver, and did then and there arrest one Oscar Marquardt, who at the time was in charge of and operating the game known as the Automobile Game and which said Automobile Game is the identical game which was mentioned and referred to in the testimony given before this court at the hearing of April 23, 1925; and the said Automobile Game is the identical game which the court on April 23, 1925, declared was not a gambling device, all of which the defendants well knew.

"And the court doth further find that the conduct of the defendants directly tends to interrupt the proceedings of this court and to impair the respect due to its authority. It is now therefore adjudged by the court that the defendants, Allen C. Orrick, Arthur J. Freund, Henry Kortjohn, and Frank L. Magoon, are guilty of a contempt of the court for failure to comply with the temporary injunction granted and issued in this cause on April 14, 1925, and doth

assess a fine against each of said defendants of the sum of fifty dollars ($50.), payable to the school fund and that said defendants also pay the costs of the contempt proceedings and in default of the payment of said fines and costs said defendants, Allen C. Orrick, Arthur J. Freund, Henry Kortjohn and Frank L. Magoon, stand committed to the common jail of the city of St. Louis.''

After an unsuccessful motion for new trial and in arrest of judgment, the case is brought here on appeal.

There can be no question but that the right to appeal in cases of this kind exists in this State. [State ex rel. v. Bland et al., 189 Mo. 197, 88 S. W. 28.]

It is also settled in this State that in *habeas corpus* proceedings to relieve one from punishment for direct contempt proceedings, we will examine the entire record and determine for ourselves whether or not, under the facts, a petitioner may be guilty of contempt. [Ex parte Creasy, 243 Mo. 679, 148 S. W. 914; In re Ewing, 273 Mo. 96, 200 S. W. 65.]

There is no uniform ruling among the State courts as to just what extent a reviewing tribunal may go in passing upon the evidence in a conviction for contempt for violating an injunction, and it is difficult to determine upon authority what matters may be considered on appeal. In many states the entire proceeding is governed by statute, and if not governed by statute the rules are laid down by judicial legislation. The character of the contempt governs to some extent.

If defendants were guilty of contempt in this case, the contempt would be of a *quasi*-criminal character, but for the purposes of appeal, such a contempt proceeding is treated as civil in character, because if it were treated as a criminal contempt no appeal would lie.

A careful analysis of the opinion written by Judge LAMM, in State ex rel. v. Bland, *supra*, shows clearly to our minds that the court treated such an appeal as a civil action, and, it being ancillary to the injunction suit, and intended not only as a punishment for the defendants, but to preserve the *status quo* as between the rights of plaintiff and defendants in the injunction suit, we should review the case here as one in equity.

In the Federal courts cases of this kind are generally treated as purely criminal contempt, an reviewable by a writ of error, and, therefore, are treated as actions at law. [Merchants S. & G. Co. v. Board of Trade of Chicago, 201 Fed. 20; Reeder v. Morton-Gregson Co., 296 Fed. 785, and cases cited.] However, a further discussion of this phase of the case becomes more or less academic in view of the result we have reached, and the conclusions at which we have arrived.

In our opinion, defendants cannot be convicted as for contempt of court in violating the order which the court issued in this case, because of its vagueness, indefiniteness, and uncertainty. The order for injunction prevented the defendants, as police officers of the city of St. Louis, from interfering with any device operated by plaintiff at his carnival "which was not a gambling device." But no device of any kind was specifically mentioned in the order. The whole question of determining what was a gambling device was left to the discretion of the police officers. The order was about as general as it could possibly be made. What were the police officers to do when armed with a copy of this injunction order? If they went upon the grounds where plaintiff was operating his carnival, and saw what they honestly believed to be a gambling device, operated by plaintiff or his agents, they would either have to guess at the proposition, take a chance and arrest the would-be offender, or permit all sorts of gambling devices to be operated rather than take any chance on violating an injunction, upon the theory that if an arrest were made, and a judicial hearing had, it would eventually be determined that they had made a mistake.

Courts should be very slow in granting injunctive relief and restraining police officers from attempting to enforce the criminal laws, except in extreme cases, for usually the alleged injured party has an adequate remedy by way of defense in the criminal prosecution if there is one. [Lewis & Spelling on Injunctions, page 489; State ex rel. v. Wood, 155 Mo. 425, 56 S. W. 474.] Of course, if such officers are becoming oppressive, or interfering with the lawful rights of a citizen, and no other adequate relief can be had, no hesitancy should be felt in granting such relief. However, in order to convict one for contempt for an alleged violation of an order of injunction, which order attempts to restrain police officers from making an arrest for what they may honestly believe to be a violation of the criminal laws of the State, such order should be clear and specific and leave no room for doubt or uncertainty as to its meaning in the minds of those to whom it is directed. [McFarland v. United States, 295 Fed. 648; Privett v. Pressley, 62 Ind. 491; Bauer v. Byrd, 245 Pa. 441; 13 C. J. 15.]

It is true that the record discloses that the chancellor had before him, when the temporary injunction was granted, or before the defendants were fined for contempt, this automobile game, and stated that in his opinion it was not a game of chance under the gambling law, and that it would be unlawful for the police to try to stop these games. But no specific games are referred to in the order granting the injunction. The defendants in their return state that they have no intention of interfering with any games which are not gambling devices. The policy of the city of St. Louis, in examin-

ing this restraining order which was to be their guide, would find nothing in the order with respect to any automobile game, or any other game specifically named. Then, if they honestly thought that such a game was a gambling device, should they be fined for contempt for violating an order so general in its terms as the one in question? What were they to do? Should they first go to some court or judge, exhibit the game in the presence of such judge, and ask him if in his opinion they would be allowed to make an arrest in such a case? Such a proceeding would be ridiculous in the extreme.

It follows without further discussion from what we have said that this judgment finding the defendants guilty of contempt cannot be permitted to stand. In fact, learned counsel for the plaintiff admit in their printed brief filed in this case, that, if this interpretation is placed upon the restraining order in question, the judgment of contempt cannot stand. Accordngly, the judgment finding the defendants guilty of contempt is reversed, and the defendants discharged. *Daues, P. J.,* and *Becker, J.,* concur.