Shirley Dee TEEFEY, Plaintiff-Respondent,

v.

John J. TEEFEY, Defendant-Appellant.

No. 59278.

Supreme Court of Missouri, En Banc.

March 8, 1976.

John J. Teefey, pro se.

Robert Frager, John R. Caslavka, Kansas City, for respondent.

HOLMAN, Judge.

The plaintiff in this action obtained a decree of dissolution of marriage in April, 1974, and appellant (hereinafter referred to as defendant) was ordered to pay the sum of $300 per month as support and maintenance for plaintiff and their minor children. In October, 1974, the prosecuting attorney at the request of plaintiff instituted proceedings under Section 452.345 [1] to cite defendant for contempt because of his failure to pay $1,250 of said maintenance. On February 5, 1975, the court sustained a motion to modify and the monthly payments were reduced to $250.

Section 452.345 relates to payment of maintenance and provides, in part, as follows:

"4. If a party fails to make required payment, the circuit clerk shall send by registered or certified mail notice of the arrearage to the obligor. If payment of the sum due is not made to the circuit clerk within ten days after sending notice, the circuit clerk shall certify the amount due to the prosecuting attorney. The prosecuting attorney shall, with the consent of the obligee, promptly initiate contempt proceedings against the obligor.

"5. The prosecuting attorney shall assist the court on behalf of a person entitled to receive maintenance or support in all proceedings initiated under this section to enforce compliance with the order."

On October 7, 1975, the contempt application was heard with defendant appearing without counsel (as he has in this court) and he was found guilty of indirect criminal

---

1. All statutory references are to V.A.M.S.

contempt. Under the authority of Section 476.120 the court sentenced defendant to 90 days imprisonment in jail with the proviso that, "After serving 6 days, he is to be released from custody on probation for one (1) year, under the supervision of the Prosecuting Attorney, on condition he make future payments regularly, and make up arrearage in accordance with a schedule provided by the Prosecuting Attorney. If employed he may be given work release privileges." Defendant filed a timely notice of appeal.

Plaintiff's counsel promptly filed a motion to dismiss the appeal based on the contention that no appeal may be taken from a conviction of criminal contempt. We ordered that motion taken with the case and it is now our duty to decide it.

■ It is well settled in this state that a conviction for criminal contempt may not be reviewed by appeal. *Ex Parte Howell,* 273 Mo. 96, 200 S.W. 65 (1918). It is equally clear that in this state and elsewhere a party may appeal from a conviction for civil contempt. See Anno. 33 A.L.R.2d 448, 508, *State ex rel. Chicago B. & Q. R. Co., v. Bland,* 189 Mo. 197, 88 S.W. 28 (1905), *Oliver v. Orrick,* 220 Mo.App. 614, 288 S.W. 966 (Mo.1926), *Threlkel v. Miles,* 320 Mo. 1140, 10 S.W.2d 953[7] (1928), and *Republic Engineering and Mfg. Co. v. Moskovitz,* 393 S.W.2d 78 (Mo.App.1965).

It accordingly appears that the decision on the motion to dismiss depends upon a determination of whether the instant contempt may be said to be civil or criminal. In that connection we think that the fact that the trial court designated this as criminal contempt does not necessarily make it such.

We are mindful of the provisions of Section 476.110 which are, in part, as follows:

"Every court of record shall have power to punish as for criminal contempt persons guilty of . . .

"(3) Willful disobedience of any process or order lawfully issued or made by it;

. . . ." If this provision is construed literally it would likely apply to all contempts and would have resulted in abolishing civil contempt in this state. We do not think that this statute was intended by the legislature to apply to the failure to obey every type of order made by a court. We have accordingly concluded that the type of contempt here involved should be determined by general rules and the decision law in this state.

"Criminal contempt proceedings are generally held to be in the nature of criminal or quasi-criminal proceedings. They are punitive in nature, and the government, courts, and people are interested in their prosecution. Their purpose is to preserve the power and vindicate the authority and dignity of the court, and to punish for disobedience of its orders. . . .

"A criminal contempt proceeding is generally held to be independent of the cause out of which the alleged contempt arose, although it is dependent for its foundation on the proceedings in such cause, . . .

"Civil contempt proceedings are generally held to be remedial and civil in their nature; that is, they are proceedings for the enforcement of some duty, and essentially a remedy for coercing a person to do the thing required. As otherwise expressed a proceeding for civil contempt is one instituted to preserve and enforce the rights of a private party to an action and to compel obedience to a judgment or decree intended to benefit such a party litigant. So a proceeding is one for civil contempt, regardless of its form, if the act charged is wholly the disobedience, by one party to a suit, of a special order made in behalf of the other party, and the disobeyed order may still be obeyed, and the purpose of the punishment is to aid in an enforcement of obedience. . . ." 17 C.J.S. Contempt § 62(5)(6), pp. 154 to 158 inclusive.

■ We approve of the statement that, ". . . Contempts fall into two categories, civil and criminal. Although at times the line is hard to draw, the essential differ-

ence lies in who is sought to be protected by the contempt proceeding. Civil contempt is for the protection of a party to the litigation, the party for whose benefit the order, judgment or decree was entered. Its function is to provide a coercive means to compel the other party to the litigation to comply with relief granted to his adversary. The civil contemnor has at all times the power to terminate his punishment by compliance with the order of the court—i.e.: purging. *Gompers v. Bucks Stove and Range Co.*, 221 U.S. 418, l.c. 441 et seq., 31 S.Ct. 492, 55 L.Ed. 797.

◼ "[2] Criminal contempt on the other hand does not serve the function of aiding a litigant in achieving the relief granted but is for the purpose of protecting the dignity of the court and, more important, to protect the authority of its decrees. The thrust of criminal contempt is the intentional interference with the judicial process and the demonstrated refusal to be bound by judicial determinations. *Gompers v. Bucks Stove and Range Co.*, *supra*, *In re Reese*, 10 Cir., 107 F. 942. The power of criminal contempt springs not from the needs to protect a litigant, but from the inherent power of the courts to protect the judicial system established by the people as the method for solving disputes. Without this power courts are no more than advisory bodies to be heeded or not at the whim of the individual." *Mechanic v. Gruensfelder*, 461 S.W.2d 298, 304, 305 (Mo.App.1970).

Criminal contempts are sometimes referred to as direct while civil contempts are described as constructive or indirect. Some cases clearly have elements of both civil and criminal contempt. While most contempts arising from matters not transpiring in court are considered civil there are some cases involving affirmative defiance of a court order which are properly classified as criminal. See *Curtis v. Tozer*, 374 S.W.2d 557 (Mo.App.1964).

◼ We have concluded that proceedings under Section 452.345 should be classified as civil contempt. It appears very clear to us

that those proceedings are provided for the benefit of the party entitled to collect maintenance. Under the general rules heretofore quoted this would cause the classification to be civil. See also, *State ex rel. Chicago B. & Q. R. Co. v. Bland*, supra, *Odom v. Langston*, 358 Mo. 241, 213 S.W.2d 948 (1948), and *Chicago B. & Q. R. Co. v. Gildersleeve*, 165 Mo.App. 370, 147 S.W. 836[3] (1912). We do not think the fact that the circuit clerk and prosecuting attorney are given certain duties by the statute would change the situation as the performance of such are obviously to aid the party entitled to receive maintenance.

The foregoing indicates our view that the contempt is civil and is accordingly subject to review on appeal. We also think that pending the appeal the appellant should be permitted to furnish bail which, of course, should be fixed at a reasonable amount according to the circumstances. See *Chicago B. & Q. R. Co. v. Gildersleeve*, supra, and *Schnabel v. Schnabel*, 179 Misc. 620, 39 N.Y.S.2d 972 (1943). The motion to dismiss the appeal is overruled.

◼ The principal point briefed is that the judgment is void because it violates Art. I, Sec. 11, Mo.Const., which provides that no person shall be imprisoned for debt. The case of *Coughlin v. Ehlert*, 39 Mo. 285 (1866) which held that a judgment providing for imprisonment for contempt for failure to pay alimony was invalid because of said constitutional prohibition has been overruled by this court in the case of *State ex rel. Stanhope v. Pratt*, 533 S.W.2d 567, decided concurrently herewith. This contention is accordingly ruled against defendant.

◼ We have concluded, however, that the judgment must be reversed because of a failure of proof. Before ordering imprisonment trial courts should be convinced that the person is financially able to make the required payment or that he has intentionally and contumaciously placed himself in a position so that he could not comply with

the court's orders. While it appeared that defendant was engaged in the "flower business" there was no evidence concerning his assets, income, or his expenses. In other words, there was no evidence from which the trial court could have concluded that he was financially able to pay the award. The question as to which party has the burden of proof in that regard has not been briefed and we do not elect to decide it in this case. It is sufficient to say that in this case where defendant appeared without counsel and offered himself as a witness that someone should have examined him concerning his assets, income, expenses, etc. If considered necessary we rely on plain error Rule 84.-13(c) in so ruling.

We recognize that if defendant owes any substantial amount of maintenance at the time of this decision that further contempt proceedings will likely be initiated. For that reason, in the interest of judicial efficiency, we will not reverse outright but will remand so that further proceedings may be had if plaintiff so desires.

Accordingly, the judgment is reversed and the cause remanded.

HENLEY, FINCH and DONNELLY, JJ., concur.

BARDGETT, J., concurs in part and dissents in part in separate opinion filed.

SEILER, C. J., and MORGAN, J., concur in part and dissent in part as per separate opinion filed by BARDGETT, J.

BARDGETT, Judge (concurring in part and dissenting in part).

I concur in the holding that proceedings for contempt under section 452.345 are civil and not criminal. I dissent from that part of the opinion that says, "Before ordering imprisonment trial courts should be convinced that the person is financially able to make the required payment *or* that he has intentionally and contumaciously placed himself in a position so that he could not comply with the court's orders." (Emphasis mine.)

In my opinion, the word *"or"* should be *"and"*. The evidence as to whether the party intentionally placed himself in a position where he could not comply with the maintenance award as it became due is proper as it goes to the reason for nonpayment. That is to say, it would show the failure to pay when due was not accidental, negligent, or due to inability. But, before the court can imprison to coerce payment, I believe the evidence must show and the court must find that the party charged has the *present* financial ability to make the payment and refuses to do so. See my dissent in *State ex rel. Stanhope v. Pratt et al.*, 533 S.W.2d 567 (Mo. banc 1976).

Therefore, while I concur in the judgment reversing and remanding the cause, I do not concur in the court's opinion which allows *past* ability to pay to be the basis for imprisonment, for past ability does not afford present ability to perform so as to be released from jail.