Kenneth Waldo WISDOM, Appellant,

v.

Carolyn B. WISDOM, Respondent.

Nos. WD 36094 & 36098.

Missouri Court of Appeals,
Western District.

Feb. 13, 1985.

Motion for Rehearing and/or Transfer to
Supreme Court Overruled and Denied
April 2, 1985.

James J. Wheeler, Ketesville, for appellant.

Louis F. Cottey, Oswald & Cottey, P.C., Kirksville, Sheryl B. Etling, Stinson, Mag & Fizzell, Kansas City, for respondent.

Before DIXON, P.J., and SHANGLER and SOMERVILLE, JJ.

SHANGLER, Judge.

Our preliminary order of prohibition issued against the respondent circuit judge to stay enforcement of a judgment of contempt against the former husband for refusal to transfer to the former wife *cash on deposit* under the terms of a property settlement agreement approved by the court and incorporated into the dissolution decree. The petition alleged jurisdictional irregularity in the contempt proceeding and judgment. The husband filed a concurrent appeal. Our order consolidated the proceedings. The respondent circuit judge moved to dismiss the prohibition proceeding and to quash our preliminary order on grounds that the remedy by appeal was adequate. We agree that whatever defect in jurisdiction and judgment for contempt the petition for prohibition pleads, is open to redress by appeal. *Teefey v. Teefey*, 533 S.W.2d 563, 566[4] (Mo. banc 1976). We sustain the motion of the respondent and quash our preliminary order in prohibition.

We review the merits of the appeal.

The marriage was dissolved by a decree of the circuit court. In advance of that court proceeding, the principals, Waldo and Carolyn Wisdom, executed under oath a property settlement agreement. The court approved the contract and integrated the terms into the judgment. The formal agreement set over to each spouse the separate property of each as defined, and then divided the marital property. Paragraph 2.B.(2)e. of the agreement set over to the wife a numbered passbook and two certain certificates of deposit which represented $30,652 cash on deposit at the Macon Building & Loan Association and

*"cash in the amount of $25,000 on deposit to HUSBAND's credit at Callao Community Bank* [emphasis added]."

The remainder of the cash on deposit to the credit of the spouses in that bank *"after delivery to WIFE of the sum of $25,000"* [original emphasis] as provided in Paragraph 2.B.(2)e. was set over to the husband under Paragraph 2.B.(1)k. of the agreement. On the day of the dissolution proceeding, March 6, 1984 [also the date of execution of the property settlement agreement], the husband signed a check to the order of the wife in the sum of $25,000 drawn upon the Callao Bank. That check was dishonored by the drawee bank, and the wife remains without delivery of the funds.

The wife then, on May 25, 1984, brought a Motion for Contempt, and an order to show cause issued against the husband. The motion alleged as the contempt that the husband has refused to transfer to the wife *a fund of $25,000* on deposit in the

Callao Bank despite the mandate of the dissolution judgment. The order to show cause directed the husband to give reason why the failure to deliver *the fund of $25,-000* to the wife as mandated in the dissolution judgment should not be adjudged a contempt of court. The order of contempt rests on the contumacy that the husband "refus[ed] to transfer to [the wife] *the fund of $25,000* described in said motion and the [dissolution] decree," and directs the husband to forthwith compliance—and, "in particular to transfer to [the wife] *the fund of $25,000.*" [emphasis added]

The contempt of court was adjudged on June 13, 1984. Thereafter, on July 3, 1984, the husband filed with the court to justify the nondelivery of the $25,000 fund, a formal document nominated *Transfer of Fund*. That document recited that at the time the check for $25,000 to the wife was executed, the husband had a line of credit with the Callao Bank with a balance of more than $25,000 still available, but that the Callao Bank without the authority or knowledge or consent of the husband cancelled the line of credit, and refused to honor the check delivered to the wife on March 6, 1984. The document explained further that at the time the check was made to the order of the wife and delivered to her, the husband acted with the belief that the sum of $25,000 was a credit available to the husband and was tantamount to a deposit. The document asserts that these events show that the execution and delivery of the check was a good faith attempt at compliance with the dissolution order. The husband then tendered, to purge the adjudged contempt, an assignment and delivery to the wife "CASH IN THE AMOUNT OF $25,000 ON DEPOSIT TO KENNETH WALDO WISDOM'S CREDIT AT CALLAO COMMUNITY BANK" with the direction that the transfer and assignment be effective as "to all cash and credits, including all lines of credit" of the husband at the bank "as of March 6, 1984," and further, instructed the Callao Bank to deliver $25,000 in cash to the wife.

The court refused the *Transfer of Fund* justification and tender as a purgation of the contempt of court. The entry of that judicial action, although peremptory, rests on the implicit term of the property settlement agreement and of the dissolution judgment: that the husband transfer to the wife *a fund in being*—$25,000 on deposit at the Callao Bank. To requite the dissolution order, and to purge from contempt, the *Transfer of Fund* document does not tender the $25,000 fund on deposit *in esse* at the time of the dissolution judgment, and as that order directs, but merely offers in lieu "all cash and credits, including all lines of credit" of the husband at the bank as of March 6, 1984. The dishonored check of that date and the cancellation of credit already exercised by then are self-evident proofs that the tender was empty and that the contempt continued. The tender amounted to nothing more than an assignment to the wife of any claim by the husband against the bank for cancellation of the line of credit, and not to deliver the $25,000 fund in being—as the dissolution judgment and the order of contempt decree.

The evidence attempted by the husband in response to the order to show cause no more than reasserted, albeit more amply, the premises for exculpation and purgation from contempt posited by the *Transfer of Fund* document. That evidence intended the proof through witness Harris, chief executive officer of the Callao Bank until the end of February 1984, that the bank and the husband had a line of credit agreement for a term from January 1984 to January 1985 in the amount of $200,000 [secured by a promissory note], and that at the time the husband executed the check there remained about $50,000 unused credit. That witness would prove also that in February 1984, Harris was informed by the husband of the imminent need of $25,000 for "a cash settlement" with the wife, and Harris told the husband to write the check and the bank would apply that amount against the line of credit. Harris would also testify that on March 6, 1984, he informed counsel for the wife by telephone that the $25,000 check by the husband

would be paid by the bank when presented. The husband offered to prove much the same by his own testimony —including that he was present when counsel telephoned Harris for assurance, and received assurance, that the bank would honor the check of the husband to the wife for $25,000.

The tender of this evidence was rejected by the court as immaterial to the issue: the refusal and failure to deliver to the wife *the fund of $25,000 on deposit* described in the property settlement agreement term incorporated as a judgment.

■ The husband argues on appeal that the evidence was tendered to prove compliance with the terms of the agreement and judgment, and hence the rejection by the court prejudiced the attempt to show cause and be free from an adjudication of contempt. That claim of error was not presented by the brief, and so does not engage our review. *Gover v. Empire Bank*, 574 S.W.2d 464, 468[1] (Mo.App. 1979).

The brief on appeal makes a composite attack on the validity of the judgment of contempt, but as a single point.

The husband asserts first that the term of the property settlement agreement incorporated into the judgment—which directs the husband to deliver to the wife *cash in the amount of $25,000 on deposit* —constitutes a judgment for the payment of money, and so may not be enforced by the contempt power. That argument, as it applies to a decree of dissolution, reverts to the principle which obtained prior to *State ex rel. Stanhope v. Pratt*, 533 S.W.2d 567 (Mo. banc 1976). *Stanhope* decided that a judgment for money which rests on an obligation of the marital status represents [l.c. 573] "something more than an ordinary debt or judgment for money." *Stanhope* dealt with a judgment for alimony. *Teefey v. Teefey*, 533 S.W.2d 563 (Mo. banc 1976) extended the *Stanhope* rationale to sustain the contempt power to enforce a judgment for child support. *Yeager v. Yeager*, 622 S.W.2d 339 (Mo.App.1981), extended the *Stanhope* rationale to enforce by contempt the payment of any money

component of the property division provision of a judgment, and *Haley v. Haley*, 648 S.W.2d 890 (Mo.App.1982) followed suit. Our own decision in *McLerran v. McLerran*, 562 S.W.2d 710 (Mo.App.1978) allowed to stand a contempt adjudication for refusal to deliver possession of property.

■ The judgment was enforceable by contempt if for no other reason than that the subject of the adjudication was a specific fund: *cash in the amount of $25,000 on deposit* to the credit of the husband at the Callao Bank. The power of the court to enforce such a judgment by contempt rests on the independent principle [*Ex Parte Fuller*, 330 Mo. 371, 50 S.W.2d 654, 655[1] (banc 1932)]:

> " '[A]n order directing the payment of specific funds adjudged to be in the possession or control of the person at the time of the trial may be enforced by contempt proceeding, and punishment may be inflicted for disobedience of the order.' "

The dissolution decree adjudges that at the time of rendition cash in the sum of $25,000 was on deposit at the Callao Bank to the credit of the husband—that is, a fund—and directs the transfer of that fund to the wife. The fund, therefore, was at that time under the control of the husband. The decree was in evidence, as was the fact of nondelivery—that is, noncompliance with the decree. Thus, a prima facie case of contempt was proven. *Hopkins v. Hopkins*, 626 S.W.2d 389, 391[1, 2] (Mo.App. 1981). In a proceeding for civil contempt for noncompliance with orders in a dissolution of marriage judgment, the contemnor has the more ready access to any facts to excuse the default. Thus, the contemnor bears the burden to prove that noncompliance was not an act of contumacy. *In re Marriage of Vanet*, 544 S.W.2d 236, 246 (Mo.App.1976). A contempt, in any case, may be adjudged only for disobedience of an order of the court within the power of the contemnor to perform, or for an inability to perform brought on by voluntary conduct of the contemnor. *Ex Parte Full-*

*er,* supra, 50 S.W.2d l.c. 657; *Teefey v. Teefey,* supra, l.c. 566[6, 7].

The fund on deposit to the credit of the husband at the Callao Bank was in existence at the time the dissolution decree was entered. The husband attempted no evidence that the fund no longer existed at the time the contempt for nondelivery was entered, or that control or possession was beyond him. The recitations of the *Transfer of Fund* document tendered to justify nondelivery of the fund and the evidence offered as proof at the contempt hearing do not dispute that the property settlement agreement incorporated as a judgment directs the transfer of an existent fund. Nor do they propose to explain that the fund no longer exists, and why. They offered only circumlocutions and evasions as to why the fund was not paid. The continued existence of cash on deposit in the sum of $25,000 to the credit of the husband at the Callao Bank was never refuted. The husband continues to resist to perform an order the evidence shows remains within his power to perform. The exercise of contempt to compel the performance was lawful. The point is denied.

The husband next contends that the judgment for contempt is invalid because the dissolution judgment does not direct him to perform the specific act the contempt adjudges he disobeyed. Of course, disobedience of an order by a person the order does not address is not contempt. *Ex Parte Le Mond,* 295 Mo. 586, 245 S.W. 1057, 1058[1] (banc 1922). The judgment of contempt adjudges that the husband "refus[es] to *transfer* to [wife] the fund of $25,000 described in said motion [for contempt] and the decree of this Court dated 6 March 1984] and orders forthwith that the husband *transfer* the fund to the wife" [emphasis added]. The husband argues that neither the property settlement agreement nor the decree of dissolution employs the term *transfer,* hence the neglect of such an initiative was not a disobedience punishable by the contempt power. A very purpose of a division of the marital property, whether by concur-

rence of the spouses or by act of the court, is to sever title into separate estates for separate ownership. The means to effectuate that change is usually described as a *transfer. See Transfer,* Black's Law Dictionary (Fifth Edition). The property settlement agreement requires the husband to *deliver* the described fund of $25,000 to the wife. The dissolution judgment incorporates that terminology. The agreement expresses the undertaking of the signatory spouses to "execute all deeds, assignments of title, documents or other papers as may be necessary to enable the other party to deal with his or her property and to carry out the purposes and intents of this contract." The dissolution judgment incorporates that provision and imposes the further direction: "the parties are ordered to perform each and every term and condition [of the agreement as incorporated]. The point is denied.

The husband next contends that the judgment is invalid for failure to recite the facts and circumstances which constitute the contempt. The husband assigns no specific deficiency. We discern none. The point is denied.

The final point contends that the judgment imposes monetary sanctions unrelated to a civil contempt, and were therefore invalid. The order of contempt directed compliance by June 27, 1984, or payment to the wife "a per diem fine or penalty of $100 for each day thereafter that he fails to do so." The order directed the payment to the wife of a sum as attorney fee incurred to enforce the judgment. The order also directed the husband to pay the wife an additional $1,300 as the damage accrued to her from the deprivation of the use of the fund as the result of the contumacy of the husband.

The purpose of civil contempt, as contradistinguished from criminal contempt, is to remedy, not to punish: it is to enforce obedience to a judgment by a party the judgment intends to benefit. *Teefey v. Teefey,* 533 S.W.2d 563, 565[1] (Mo. banc 1976). In like manner, the sanctions which follow a judgment of civil contempt are

meant to remedy—to coerce compliance—and not as a penalty, as in criminal contempt. *Division of Employment Security v. Weaver*, 614 S.W.2d 729, 731[4–7] (Mo. App.1981). The civil contemnor retains the power to terminate any sanction, even imprisonment, by the act of compliance—an alternative not open to the criminal contemnor. *Chemical Fireproofing Corporation v. Bronska*, 553 S.W.2d 710, 714[5, 6] (Mo.App.1977). Thus also, a money sanction in a civil contempt functions only to remedy the contempt and to coerce the contemnor to perform. For that reason, a peremptory fine *per se*, unrelated to the performance sought, functions only to punish and not to compel. *Redifer v. Redifer*, 650 S.W.2d 26, 28[3–5] (Mo.App.1983). A money sanction imposed to enforce a civil contempt adjudication, rather, is per diem, continues only as long as the disobedience continues [*Chemical Fireproofing Corporation v. Bronska*, supra, l.c. 715[7]] and properly bears some relation to damages occasioned by the default in performance [*Division of Employment Security v. Weaver*, supra, l.c. 731[4–7]].

The peremptory sanction of $1,300 is unrelated to any performance—and so is beyond the power of the contemnor to purge—and so coerces no compliance with the order of the court. It punishes the husband, but without remedy to the wife. The sanction of $100 per day as long as noncompliance continues, intends to coerce compliance—and hence a remedy to the wife. The amount imposed, however, bears no relation to any damage incurred to the wife from deprivation of the $25,000 fund, and so smacks of penalty. There was no evidence of damages, nor does any insight of judicial notice supply that deficiency. We remand, however, to allow the court to reconsider the money sanction and to formulate that element of the judgment in a manner consistent with the principles of civil contempt.

The motion of the respondent judge to set aside our preliminary order in prohibition [case No. WD 36,094] is sustained, and the order is hereby quashed.

The judgment on appeal [Case No. WD 36,098] is affirmed as to the adjudication of contempt, but is reversed as to the money sanction of $1,300, and is reversed and remanded for reconsideration as to the money sanction of $100 per day.

All concur.