# CIRCUIT COURT OF THE CITY OF RICHMOND

Carolyn Adams

v.

Sa'ad El-Amin

September 15, 1993

Case No. (Chancery) N-5625–2 (90H-260)

BY JUDGE ROBERT L. HARRIS, SR.

At the Show Cause Hearing held September 3, 1993, at which the Defendant was found in civil contempt of court for willfully violating the Court's child and spousal support Order of April 30, 1993,[1] the Court took under advisement the Defendant's request to be allowed to post bond pending appeal of the contempt finding and the jail sentence imposed. Because the Court believes that allowing the Defendant to post bond would be inconsistent with the remedial purpose of this civil contempt punishment, his request is denied.

The length of the jail sentence imposed on the Defendant by this Court will be determined solely by the length of time necessary for the Defendant to decide to comply with the orders of the Court. Accordingly, the sentence is of a remedial sort designed to coerce, not punish.

---

[1] The basis for the Court's finding, as stated in the Order of September 3, 1993, was that, since the Order of April 30, 1993, the Defendant has deliberately chosen to pay exactly one-half of the total amount ordered, characterizing that $1,500.00 as paid in full satisfaction of his child support obligation. Prior to the April 30, 1993, the Defendant's support payments, although often not in compliance with the Court's orders, at least varied enough so that an argument could be made that he was *attempting* to comply with the orders. "In a show cause hearing, the moving party need only prove that the offending party failed to comply with an order of the trial court. The offending party then has the burden of proving justification for his or her failure to comply." *Alexander v. Alexander*, 12 Va. App. 691, 697, 406 S.E.2d 666, 669 (1991). After April 30, 1993, even the superficial appearance of attempted compliance disappeared.

*See, e.g., Bagwell v. International Union, UMWA*, 244 Va. 463, 475, 423 S.E.2d 349, 356 (1992), *cert. granted*, 508 U.S. —, 124 L. Ed. 2d 657 (1993) ("Coercive, civil contempt sanctions are imposed to compel a recalcitrant defendant to comply with a court's order.").

The Court takes no pleasure in sentencing Mr. El-Amin to jail. All too limited space in the Richmond City Jail is not well utilized when occupied by a highly talented attorney; neither is the career of that attorney well served by such a sentence. However, the Court is determined that its support orders, unless reversed by a higher court, or modified, pursuant to a motion made to this Court, will be obeyed. The Order entered September 3, 1993, imposing a jail sentence on the Defendant, but permitting him to serve on work-release, is the best compromise available — allowing Mr. El-Amin to continue practicing law while still feeling the coercive effect of time in jail.

However, the coercive effect of the Defendant's sentence is dependent upon the jail time imposed. The Court hopes that Mr. El-Amin will yet avoid jail by complying with its orders, but, absent such compliance, coercion must be employed, and such coercion would be nullified if the Defendant is allowed to delay imposition of the sentence. The long, painful history of this case need not be outlined here, but, suffice it to say, it has been one of delay and noncompliance since the Bill of Complaint was filed in 1987. Only during the period between January, 1990 and February, 1992, when the bulk of his support obligation was satisfied by an assignment to the Plaintiff of payments due from David Mott Murray, was the Defendant generally in compliance with the support order of this Court.

Despite the general history of non-compliance, the Defendant has, until now, in response to every Rule to Show Cause save one, convinced the Court that there was insufficient evidence of his *willful* non-compliance. However, as noted, *supra* note 1, the Court found, in its Order of September 3, 1993, that the pattern of the Defendant's support payments since the Order of April 30, 1993, demonstrated a willful effort to pay only an amount which he could characterize as going to his daughter and not to his former spouse. Such willful non-compliance harms not only the Plaintiff, who is deprived of funds to which the Court has found she is entitled, but challenges the dignity of the Court. *See id.* at 478, 423 S.E.2d at 358 ("Courts of the Commonwealth must have the authority to enforce their orders by employing

coercive, civil sanctions if the dignity of the law and public respect for the judiciary are to be maintained.").

Section 19.2–319 of the Code of Virginia states that "in any case of judgment for civil or criminal contempt, from which an appeal may be taken or to which a writ of error lies, the court giving such judgment *may* postpone the execution thereof for such time and on such terms as it deems proper." Va. Code Ann. § 19.2–319 (1990) (emphasis added). In contrast, convictions resulting in sentences of death or imprisonment in a state correctional institution *obligate* a court to suspend execution of the sentence "for such length of time as . . . will enable the accused to obtain a copy of the record and present his petition for a writ of error . . . ." *Ramey v. Commonwealth*, 145 Va. 848, 851–52, 133 S.E. 755, 756 (1926); *see also* Va. Code Ann. § 19.2–319. Similarly, *pre-conviction* bail is allowed for all defendants, including those accused of contempt, unless a court finds that there is probable cause that an accused will fail to appear for later proceedings or that he poses a danger to himself or the public. Va. Code Ann. § 19.2–120 (Supp. 1993). Whether or not *post-conviction* bail is allowed is within the discretion of the court for all convictions except misdemeanors. *See* Va. Code Ann. § 19.2–319.

"Although 'post-conviction bail is generally less liberally accorded than in the pretrial stage,' *State v. Whyte*, 163 W. Va. 522, 529, 258 S.E.2d 123, 127 (1979), the statute requires the trial judge to exercise 'not an arbitrary discretion, but a sound judicial discretion.' *Judd No. 2 v. Commonwealth*, 146 Va. 276, 277, 135 S.E.2d 713, 714 (1926)." *Dowell v. Commonwealth*, 6 Va. App. 225, 228–29, 367 S.E.2d 742, 744 (1988). In assessing the appropriateness of post-conviction bail in the criminal context, a court looks primarily at the likelihood that a defendant will fail to appear at subsequent proceedings and at whether or not his freedom poses a danger to himself or the public. *See id*. at 229, 367 S.E.2d at 744. Were those the only concerns involved in the civil contempt context present in the instant case, there would be no question that Mr. El-Amin should remain free during the pendency of any appeal of his contempt conviction. However, the nature and purpose of civil contempt sentences dictates other considerations with respect to bail matters.

The Court declines to adopt, as a *general* rule, the position taken by the Supreme Court of Missouri, with respect to contempt convictions arising from a failure to pay court ordered child or spousal support,

that "pending his appeal the appellant should be permitted to furnish bail . . . ." *Teefey v. Teefey*, 533 S.W.2d 563, 566 (Mo. 1976). Under the facts of *Teefey*, bail would presumably have been appropriate, but not necessarily because of a general rule granting bail in such instances. In *Teefey*, the defendant was tried for contempt of court based upon a past failure to pay the full amount of support ordered. Several months prior to the hearing on the contempt application, the defendant prevailed on a motion to reduce his support obligation and there is no indication in the court's opinion that, at the time of the contempt hearing, the defendant was not complying with the modified order. *See id.* at 564–65. Accordingly, since the contempt conviction, which ultimately was reversed by the Supreme Court, *id.* at 567, involved only a past amount due, the interests of the spouse to whom that amount was due could presumably be adequately protected with an appropriate bond.[2]

In the case of Mr. El-Amin and his former spouse, it is not simply a past amount which is at issue. The evidence and testimony presented at the Show Cause hearing held September 3, 1993, indicated that it is El-Amin's intention to continue paying only the $1,500.00 per month which he chooses to describe as "child support." In describing his proposal to offset the past non-compliance which was at issue at the September 3, 1993, Show Cause Hearing by paying, on behalf of his daughter, $1,284.50 per month directly to St. Catherine's School for current and past tuition due, El-Amin acknowledged that he would, under the proposal, continue to pay, as direct support, only the $1,500.00 which he had been paying since the Court's April 30, 1993, support order. Indeed, apparently his discussions with his former spouse regarding his proposal contemplated her agreeing to such a payment arrangement. The effect of this arrangement, as explained in El-Amin's testimony, would be to postpone his full support obligation pending his daughter's graduation from high school, when, presumably, no further child support would be owed. He could then, on his own schedule, begin to apply additional money as payments on his burgeoning arrearage. The Defendant's proposal, rather than a lauda-

---

[2] Similarly, in Mississippi, by statute, bond is mandated when a contempt conviction involves only a past due amount. A person convicted of civil contempt for failing to pay a monetary sum is allowed to avoid jail during the pendency of an appeal by posting a bond in an amount of 125% of the sum owed. *See Jones v. Hargrove*, 493 So. 2d 346, 347 (Miss. 1986) (citing Miss. Code Ann. § 11–51–12 (Supp. 1985)).

tory effort to provide necessary funds for his minor daughter's education,[3] was primarily designed to avoid a contempt conviction and delay his support obligations. Presumably his recent Motion to Recuse and his late-hour petition to the Virginia Court of Appeals for a Writ of Prohibition and a Stay of the September 3, 1993, Show Cause Hearing were similarly motivated by a desire to delay. Likewise, the Defendant's request for bond pending his appeal of the contempt conviction would, by delaying the coercive effect of a jail sentence, serve his desire to postpone his support obligations. The resulting harm to the Plaintiff argues strongly against allowing the Defendant to remain free pending his appeal. *Cf. United States v. Donohue*, 656 F.2d 64, 66 (4th Cir.), *cert. denied*, 454 U.S. 964 (1981) (citing 28 U.S.C. § 1826(b), dealing with recalcitrant witnesses who are found in contempt of court, the court of appeals noted: "The court cannot minimize the effect of bail on the contempt order. . . . Here the small possibility of success measured against the effect of delay dictates a conclusion that the appeal is frivolous."); *In re Visitor*, 400 F. Supp. 446, 448 (D. S.D. 1975) (bail denied where contempt conviction appealed only for purposes of delay). However, the Court is also aware of the not insignificant burden any lingering doubts about the propriety of his jail sentence will place on the Defendant and would, accordingly, urge the Court of Appeals to grant an expedited hearing on any appeal of his conviction. *Cf. Agrella v. Rivkind*, 404 So.2d 1113, 1114 (Fla. Dist. Ct. App. 1981) (expedited hearing ordered by appellate court where trial judge appropriately denied bail following contempt conviction).

It is apparent to the Court that, since the April 30, 1993, Order, Mr. El-Amin has made a conscious decision to pay only $1,500.00 per month, a decision more related to his dislike of his former spouse than to his ability to pay.[4] One ordered by a court to pay support to a former spouse is not authorized to modify the support arrangement on his own and it is the intent of this Court that El-Amin will make a serious effort

---

[3] The Court notes that, ironically, while *proposing* to provide money to the minor daughter to whom the Court has ruled that support is owed, the Defendant found the wherewithal to *provide* financial support to an adult son, by an earlier spouse, who is currently in law school.

[4] His antipathy toward his former spouse even infected the "anonymous source" that he testified was willing to provide the funds necessary for him to make the proposed payments to St. Catherine's School. According to El-Amin's testimony the "source" would not provide any money which would go directly to the former spouse.

to comply with the Court's orders or spend his nights in jail. Because ongoing non-compliance with the Court's order, as reflected in the Defendant's own testimony, is involved here, the resulting contempt conviction shares as much with contempt convictions based upon continuing refusal of witnesses to testify as it does with the past non-compliance more typical in support matters.

The history of this case clearly demonstrates that coercion, actual or threatened, has been the most effective method of stimulating efforts by the Defendant to comply with the Court's support orders.[5] The purpose of the jail sentence is to force the Defendant at least to attempt to comply with the Court's order, just as recalcitrant witnesses may be imprisoned for coercive purposes. That purpose will be nullified if he is allowed to remain free on bail. *See State v. Faith Baptist Church,* 344 N.W.2d 626, 629 (Neb. 1984) ("Were one committed to jail in order to coerce compliance with a court order entitled to bail pending the outcome of his attack on the order, the commitment to jail would be deprived of its coercive features."); *cf. Agrella,* 404 So. 2d at 1114 (trial court did not abuse discretion in denying bail to a witness imprisoned in an effort to compel testimony to grand jury).

---

[5] Typically, the pattern of support payments reveals increased amounts paid immediately prior to Show Cause hearings. The one obvious exception to that pattern were the payments leading up to the September 3, 1993, hearing; those payments remained at the $1,500.00 level which El-Amin is currently choosing to pay. Additionally, the Court notes that the assignment of the Murray note, *see supra,* which brought the Defendant into general compliance with the Court's orders for a two year period, was made in response to a Show Cause hearing.