**James H. JACOBY, Appellant,**

v.

**Charlene Ann JACOBY, Respondent.**

**No. WD 34815.**

Missouri Court of Appeals, Western District.

July 31, 1984.

James J. Wheeler, Keytesville, for appellant.

Michael L. Midyett, Pros. Atty., Keytesville, for respondent.

Before PRITCHARD, P.J., and SOMERVILLE and KENNEDY, JJ.

SOMERVILLE, Judge.

A defaulting husband (hereinafter contemnor) has appealed from a judgment of contempt and commitment order for failure to pay child support initiated pursuant to § 452.345, RSMo Supp.1983. Contempt proceedings pursued under § 452.345, supra, are civil in nature and subject to direct appeal. *Teefey v. Teefey*, 533 S.W.2d 563, 566 (Mo. banc 1976).

The proceedings below were instigated by the filing of a "Motion For Contempt" by the prosecuting attorney of Chariton County, Missouri, the contents of which were verified under oath by the contemnor's ex-wife (hereinafter proponent). Under a decree of dissolution rendered February 12, 1981, proponent was awarded custody of three minor children born of the marriage between proponent and contemnor and the latter was ordered to pay proponent child support in the amount of $25.00 per week for each child.

The "Motion For Contempt", inter alia, singularly charged that contemnor had failed and refused to pay proponent child support per the decree of dissolution, and, as of the date of said motion, $450.00 in

child support payments were in arrears. An "Order to Show Cause" issued and served on contemnor in conjunction therewith, inter alia, paralleled the single charge of contumacious conduct set forth in the "Motion For Contempt".

Pursuant to the "Order to Show Cause", a hearing was held on the civil contempt charge leveled against the contemnor on June 1, 1982, at which time the proponent made a prima facie case in accordance with *In Re Marriage of Vanet*, 544 S.W.2d 236 (Mo.App.1976). However, as the contemnor was not represented by counsel, the trial court, on its own motion, continued the matter until June 21, 1982, in order to give the contemnor an opportunity to obtain counsel. June 21, 1982, came and went without any further hearing in the matter. The only inkling of an explanation for not hearing the matter on June 21, 1982, as previously set, is the following docket entry under date of June 21, 1982: "The Court is informed by telephone call from Hamp Ford that a consent order will be mailed providing that James H. Jacoby will pay $350.00 per month, by certified check or Money Order, until such time as past due payments are brought current and then $300.00 per month." No "consent order" was ever mailed or otherwise formalized.

In response to "hardship" pleas of the proponent, the prosecuting attorney of Chariton County noticed the original "Motion For Contempt" up for a further hearing on February 22, 1983. The contemnor again appeared without counsel. After a limited hearing, at which time contemnor (a farmer-construction worker) related certain physical infirmities and fiscal adversities which purportedly rendered him unable to make the delinquent child support payments, the trial court continued the hearing to March 1, 1983. The husband finally obtained counsel, and on motion of husband's counsel the matter was continued until March 15, 1983. During the course of the hearing on March 15, 1983, evidence was introduced that either in June or October of 1982 the contemnor received approximately $60,000.00 from "fire insurance

proceeds", $34,000.00 of which he spent on clothing and household goods for the benefit of himself and the wife of a second marriage, with the remainder apparently having been spent for living expenses and unsuccessful farming operations.

What purported to be a judgment in contempt was rendered by the trial court on March 15, 1983. It was cast in the following terms: "The Court finds James H. Jacoby in contempt of this Court in that he received $34,000 cash from an insurance company and spent all of said cash on clothing and household goods for himself, and did not catch up on his child support payments as ordered by this Court 2–13–81." What purported to be a commitment order was issued by the trial court on the same date (March 15, 1983). It was cast in the following terms: "It is by the Court ordered that James H. Jacoby be sent to jail for ten days. Commitment stayed until 21 March 1983 to allow James H. Jacoby time to get his affairs in order. James H. Jacoby may purge himself of said contempt at any time and be free of said jail sentence."

Apparently harboring reservations about the legal efficacy of the judgment of contempt and order of commitment dated March 15, 1983, the trial court, on April 12, 1983, after giving all interested parties notice, undertook to amend its original judgment of contempt and order of commitment. What purported to be the judgment of contempt was amended to read as follows: "Now therefore it is ordered and adjudged that James H. Jacoby is guilty of contempt of this Court because of his spending $34,000 for household goods and clothing for his family at a time when he was delinquent at least $1,250.00 in his child support payments and by making such large expenditure he knowingly and intentionally placed himself in a position where he cannot comply with his obligation to pay child support as ordered by this Court." What purported to be the order of commitment was amended to read as follows: "It is therefore ordered that James H. Jacoby be committed to the Chariton

County jail until such time as he has purged himself of contempt by causing part of his $34,000.00 household goods to be sold so that the sum of $1,250.00 [1] can be paid on the said present $2585.00 child support delinquency."

Contemnor raises, in the aggregate, seven points on appeal. At least two, and possibly more, thereof, when viewed collectively, may be fairly paraphrased as attacking the legal efficacy of the judgment of contempt and commitment order on the basis that they were not responsive to the "Motion For Contempt" and "Show Cause Order" and were predicated on grounds for which contemnor was neither charged nor given notice. This amalgamated point is deemed dispositive of this appeal.

■ Civil contempt and criminal contempt are legally distinguishable—the primary purpose of civil contempt is to coerce a party litigant to comply with relief granted to his adversary, while the primary purpose of criminal contempt is to protect, preserve, and vindicate the power and dignity of the law itself. *Ex Parte Ryan*, 607 S.W.2d 888, 890 (Mo.App.1980), and cases therein cited. Because of their distinguishing features, one guilty of criminal contempt is committed for a fixed period while one guilty of civil contempt is committed for an indeterminate period, i.e. until he purges himself. *Leslie v. Leslie*, 620 S.W.2d 48, 50 (Mo.App.1981). For this reason, one guilty of civil contempt is rhetorically referred to as "his own jailer."

■ Notwithstanding a number of patent distinguishing features between criminal and civil contempt, the substance of many statutory provisions and common law principles appertaining to criminal contempt have been judicially applied in civil contempt because of the latter's inherent savoring of criminality. In *Ex Parte Brown*, 530 S.W.2d 228, 231 (Mo. banc 1975), a case involving *criminal* contempt, the court curtly stated "[w]e hold again that in contempt proceedings, whether direct or indirect, the facts and circumstances constituting the offense, not mere legal conclusions, must be recited with particularity in both the judgment of contempt and the order of commitment." The stringent requirements of specificity in judgments of contempt and commitment orders in criminal contempt reaffirmed in *Ex Parte Brown*, supra, have been held applicable in civil contempt proceedings under § 452.345, supra. *Leslie v. Leslie*, supra, at 49–50; and *Ex Parte Ryan*, supra, at 891–92. Due to the dichotomous nature of civil contempt, that is, possessing civil and criminal overtones, the strict notice requirements applicable in indirect criminal contempt proceedings, *Sands v. Richardson*, 252 S.W. 990, 994 (Mo.App.1923), are also applicable in civil contempt proceedings. *Jafarian-Kerman v. Jafarian-Kerman*, 424 S.W.2d 333, 341 (Mo.App.1967). Regarding the strictures of notice in indirect criminal contempt proceedings, the court in *G_____ v. Souder*, 305 S.W.2d 883, 886–87 (Mo.App.1957), held a judgment of criminal contempt void because it was posited upon conduct different from that contained in the charge citing the alleged contemnor.

■ In the case sub judice the contemnor was cited (Motion for Contempt) for failure to pay child support per the dissolution decree. The judgment of contempt was posited on the ground that contemnor was "guilty of contempt of the Court because of his spending $34,000 for household goods and clothing for his family at a time when he was delinquent at least $1,250.00 in his child support payments." There was no decretal provision in the dissolution decree that contemnor refrain or abstain from spending any amount, from whatever source, for household goods and clothing for any newly acquired family. The decretal provision favoring proponent and sought to be enforced by the contempt proceeding, as clearly explicated in the "Motion for Contempt", was contemnor's obligation to pay child support. In sum,

1. As garnered from the record, this sum apparently represented the total amount of delinquent child support payments immediately prior to receipt of the so-called insurance proceeds.

the "Motion For Contempt" charged one thing and the trial court purported to find contemnor guilty of another thing. The same irregularity was transposed to the commitment order as it directed "that James H. Jacoby be committed to the Chariton County jail until such time as he has purged himself of contempt by causing part of his $34,000.00 household goods to be sold so that the sum of $1,250.00 can be paid on the said present $2585.00 child support delinquency." Literally construed, the only way contemnor could purge himself of contempt would be to sell or liquidate such portion of household goods purchased with the $34,000.00 insurance proceeds as was required to raise $1,250.00 for availability for payment to proponent. The glaring fallacy of the aforementioned, in addition to not being responsive to the Motion for Contempt, is that it was immaterial where the money came from for contemnor to discharge the child support arrearages. The limitation placed upon contemnor's right to purge himself of contempt in the order of commitment is equally as void as the judgment of contempt from which it emanated.

It is apparent that certain confusion reigned below regarding the charge of contempt set forth in the "Motion For Contempt" vis-a-vis contemnor's efforts to prove the affirmative defense of inability to pay the child support payments, and, concomitantly, that his inability to do so was not intentionally or contumaciously brought about by his own conduct. See *In Re Marriage of Vanet*, supra, at 245–46. In all fairness, it appears the trial court was acutely concerned about complying with *Leslie v. Leslie*, supra, at 50, footnote 2., advising that the requirements of particularity as to facts in judgments of contempt and commitment orders in civil contempt proceedings pursuant to § 452.345, supra, extend to the court's "findings" on the affirmative defense of inability to pay. In an attempt to comply therewith, the trial court attempted to explicate with particu-

larity that the contemnor had not sustained the affirmative defense of inability to pay as such was occasioned by his own intentional conduct in frittering away some $34,-000.00 for household goods rather than using an appropriate portion thereof to discharge his child support obligations. Be that as it may, a cloud of confusion and fatal irregularity still hovers over the judgment of contempt and order of commitment, and there is no escape from the conclusion that both are posited on a ground entirely different from that charged in the "Motion For Contempt" and sustained by the evidence presented by proponent. Perforce, the judgment of contempt and order of commitment rendered and entered below are declared void for the reasons and authorities heretofore advanced and cited.

Although this court is constrained to reverse the judgment of contempt and set aside the order of commitment, the matter is remanded to permit, if desired, the initiation of further proceedings based on current facts. *Teefey v. Teefey*, supra, at 567.

Judgment of contempt reversed, commitment order set aside, and case remanded.

PRITCHARD, P.J., concurs.

KENNEDY, J., dissents in separate dissenting opinion.

KENNEDY, Judge, dissenting.

It seems to me that the intent of the judgment of contempt, when considered in the context of the motion for contempt, and of the record before the court,[1] is perfectly clear. It was that the defendant had not paid the child support ordered by the court, even though he had had in hand sufficient funds to do so, but had spent the funds on other things. I do not think it is necessary to read this judgment, as the principal opinion does, that defendant was being found guilty of contempt for spending funds for

1. *McGowan v. St. Louis Union Trust Co.*, 369 S.W.2d 144, 154–55 (Mo.1963); *First National Bank of Colorado Springs v. Mark IV Co.*, 591 S.W.2d 63, 69–70 (Mo.App.1979); 17A Mo.Dig., Judgments § 524 et seq. (1955).

household goods and clothing for a newly acquired family.

I agree with the principal opinion that the commitment order is bad, but that could be corrected by a remand of the case with directions to enter a new commitment order which edits out the words "by causing part of his $34,000.00 household goods to be sold" and the remainder of the sentence, and inserting in lieu thereof the words "by payment of $1,250 upon the $2,850 delinquency."

This part of the order would then read: "that James H. Jacoby be committed to the Chariton County jail until such time as he has purged himself of contempt by payment of $1,250 upon the $2,850 delinquency." Such an order would comply with the standards enunciated in the principal opinion.