INTERNATIONAL MOTOR COMPANY, INC., Plaintiff/Respondent,

v.

BOGHOSIAN MOTOR COMPANY, INC., Paul Boghosian, John Boghosian, Ann M. Boghosian, Marilyn G. Boghosian, Erwin W. Schwarz, Charles E. Valier, Aristocrat Development Corp., and Michael L. Finocchiaro, Defendants/Appellants,

v.

Wade E. FUCHS, Third–Party Defendant.

No. 63110.

Missouri Court of Appeals, Eastern District, Division Two.

Dec. 7, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 20, 1994.

Application to Transfer Denied March 22, 1994.

---

David L. Campbell, Campbell & Campbell, St. Louis, for defendants, appellants.

Thomas G. Berndsen, Becker, Dufour, Yarbrough & Berndsen, St. Louis, for plaintiff, respondent.

CRANE, Presiding Judge.

Defendant Paul Boghosian appeals from a judgment holding him in contempt of court and an order of commitment pursuant thereto. We affirm in part, reverse in part and remand.

## FACTUAL BACKGROUND

In 1988 both plaintiff International Motor Co., Inc. and defendant Boghosian Motor Company, Inc. were Missouri automobile dealerships. Defendant John Boghosian was president of Boghosian Motor Company, Inc. and father of defendant Paul Boghosian. Paul Boghosian was an officer and director of plaintiff from October 1987 to May 1988.

This case concerns a 1986 Mercedes Benz automobile bearing VIN No. WDBCA35D6GA267606. The original Arkansas certificate of title for the vehicle was issued to Mercedes Benz Credit Corp. on October 2, 1986. On June 9, 1987 title was transferred to a Kansas City automobile dealer and then transferred again to Boghosian Motor Co. In October 1987, plaintiff purchased the Mercedes from Boghosian Motor Co. for $37,700 which it paid. At the time plaintiff purchased the vehicle, Boghosian Motor Co. delivered the original certificate of title to plaintiff, but did not endorse the assignment of title on the reverse side.

Paul Boghosian ended his association with plaintiff on April 22, 1988. At that time, plaintiff could not locate the title to the Mercedes. Paul Boghosian told plaintiff's president, Wade Fuchs, that he did not know where the title was. Plaintiff then obtained a replacement certificate of title from Arkansas on May 17, 1988, which listed Mercedes Benz Credit Corp. as the owner. Plaintiff obtained all the necessary endorsements to reconstruct the chain of title through the sale to Boghosian Motor Co.

On May 24, 1988, plaintiff filed a Petition for Permanent Injunction against Boghosian Motor Co., Paul Boghosian, and John Boghosian. In Count I, plaintiff alleged that it had purchased eight automobiles from or through defendants (including the 1986 Mercedes), that Boghosian Motor Co. was to have furnished certificates of title to plaintiff for the vehicles, that at the time Paul Boghosian left plaintiff's employ, the titles disappeared, and that defendants had refused to endorse the duplicate certificates of title. Plaintiff re-

quested the court to order defendants to "execute any and all necessary duplicate Certificates of Title, and/or Powers of Attorney, with respect to the automobiles identified herein...."

In Count II plaintiff alleged that Paul Boghosian was permitted to use plaintiff's demonstrator automobiles, that he took a leave of absence on April 28, 1988, that he had two of plaintiff's vehicles (including the 1986 Mercedes) in his possession, and that he had refused to return those vehicles to plaintiff. For relief in Count II, plaintiff sought delivery of the two vehicles. Plaintiff also filed a motion for Preliminary Injunction at that time, seeking to compel defendants to deliver certificates of title and/or powers of attorney and possession of the vehicles.

The motion was called for hearing on June 8, 1988 after which the court entered the following order:

Plaintiff's action for preliminary injunction called for hearing. Plaintiff appears in person and by counsel. Defendants appear in person and by counsel.

*Count I:* Upon delivery of duly executed and notarized powers of attorney from Boghosian Motor Co., with respect to the vehicles identified in paragraph 7 of Count I of plaintiff's petition for permanent injunction (upon which the petition for preliminary injunction is partially based), plaintiff shall, and hereby does, dismiss, without prejudice, Count I of the petition for permanent injunction. Provided however, defendants shall perform any and all necessary other acts, if any, to cause the transfer of title of said vehicles from Boghosian Motor Co. to plaintiff.

*Count II:* As to Count II of plaintiff's petition for permanent injunction (upon which the petition for preliminary injunction is partially based), the same shall be continued, to be reset upon application of either party.

On June 8, 1988 Boghosian Motor Co. supplied plaintiff with a power of attorney allowing plaintiff to sign the replacement certificate on its behalf to show reassignment of the Mercedes. After submitting the replace-

ment Arkansas title with the endorsed assignments to Missouri, plaintiff received an original Missouri certificate of title for the Mercedes on June 17, 1988. The Missouri title showed plaintiff as the owner of the vehicle. However, plaintiff was not in possession of the Mercedes and did not know of its location.

Two years later Paul Boghosian contacted Erwin F. Schwarz[1], an automobile dealer doing business as Erwin F. Schwarz Ltd., and asked him if he would be interested in purchasing the Mercedes. Paul Boghosian took him to a garage in south St. Louis to look at the vehicle. Boghosian Motor Co. sold the Mercedes to Erwin F. Schwarz Ltd. on December 29, 1990 for $22,500. At that time, Boghosian Motor Co. delivered both the original Arkansas certificate of title and the Mercedes to Schwarz. Paul Boghosian endorsed the title on behalf of Boghosian Motor Co. At the time he furnished the title to Schwarz, he told Schwarz that he had lost his dealer's license and wanted the reassignment of the title to Erwin F. Schwarz Ltd. to be dated December 22, 1988. (Boghosian Motor Co.'s dealership license had in fact expired on December 31, 1988.) Schwarz gave Paul Boghosian his company's cashier's check for $22,500 on December 29, 1990, which was deposited in Paul Boghosian's joint checking account with his wife on December 31, 1990. (Erwin F. Schwarz Ltd. subsequently sold the Mercedes to a third party.)

On July 7, 1992, after learning of the sale to Erwin F. Schwarz Ltd., plaintiff filed a motion and show cause order to hold defendants in contempt of court. The motion alleged defendants had violated the June 8 court order by selling the 1986 Mercedes to Schwarz and by negotiating and endorsing the original Arkansas certificate of title to Schwarz. The motion was called for hearing on September 8, 1992. The court issued an Order and Judgment for Contempt finding Paul Boghosian in contempt of court for violating the June 8 order by selling the automobile to Erwin W. Schwartz, d/b/a Erwin F. Schwarz Ltd. and endorsing and physically delivering to Erwin F. Schwarz Ltd. the original Arkansas certificate of title. Paul

**1.** This defendant was designated as Erwin W. Schwarz in the petition.

Boghosian was given 60 days to purge himself of the contempt by paying plaintiff $54,099.50, which represented the amount plaintiff paid for the Mercedes plus interest from the date plaintiff purchased the car. Paul Boghosian failed to purge his contempt by November 10, 1992, on which date the judge entered an Order of Commitment incarcerating him until he purged his contempt.

### APPEAL

Paul Boghosian, [hereinafter defendant], having posted bond, appeals from this order and the contempt judgment. He raises multiple assignments of error under four points. We address each point; however, only a portion of his fourth point has merit. There he correctly argues the trial court erred in ordering him incarcerated until he paid the $54,099.50, which payment was not required by the original order.

■ Civil contempt orders become appealable once they have been enforced, which includes incarceration of the individual pursuant to a warrant of commitment. *City of Pagedale v. Taylor,* 790 S.W.2d 516, 518 (Mo. App.1990). Generally, in civil contempt cases, a trial court's ruling will not be disturbed on appeal in the absence of a clear abuse of discretion. *Bopp v. Bopp,* 671 S.W.2d 348, 352 (Mo.App.1984).

■ In a court tried case, the judgment of the trial court must be sustained unless there is no substantial evidence to support it, it is against the weight of evidence, or it erroneously applies or declares the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). The court accepts all evidence and inferences favorable to the judgment and disregards all contrary inferences. *Behen v. Elliot,* 791 S.W.2d 475, 476 (Mo.App.1990).

### I.

For his first point defendant asserts that the trial court lacked jurisdiction to find him in contempt for violating the June 8, 1988 order. He asserts lack of jurisdiction for three independent reasons, which we will discuss in the order raised.

■ First, defendant argues that plaintiff abandoned its claim for relief on Count I when it filed amended pleadings which did not incorporate or refer to Count I.[2] Defendant relies on the rule that "an amendment to pleadings abandons any prior pleadings not referred to or incorporated into the new pleading," citing *Danforth v. Danforth,* 663 S.W.2d 288, 294 (Mo.App.1983) and *Laux v. Motor Carriers Council of St. Louis, Inc.,* 499 S.W.2d 805, 809 (Mo.1973). However, these and other cases cited by defendant in his argument address the issue of whether a pleading was before the court to support the introduction of evidence or a judgment. In this case Count I was before the court and had not been abandoned when the court entered its June 8, 1988 order on Count I. The order of contempt was based on a separate pleading, the Motion to Hold Defendants in Contempt of Court. Defendant cites no authority to support his contention that the pleadings on which the original judgment was based must be realleged to support a contempt action for violation of that judgment. This subpoint has no merit.

■ Next defendant argues the June 8, 1988 order was *coram non judice* and void because the portion of the order directing defendants to "perform any and all necessary other acts, if any, to cause the transfer of title" to the vehicles was beyond the relief sought in Count I. We disagree.

In Count I of plaintiff's Petition for Permanent Injunction, plaintiff prayed for an order compelling defendants

to execute any and all necessary duplicate Certificates of Title, and/or Powers of Attorney, with respect to the automobiles identified herein, so that International may sell the vehicles in its possession and reassign and deliver the titles to purchasers of motor vehicles as required by law, and that this Court grant such other and further relief as may be meet and proper under the circumstances.

In plaintiff's Motion for Preliminary Injunction, plaintiff requested the court to compel defendants to "immediately deliver to Plaintiff, duly executed for transfer, all necessary

---

**2.** Plaintiff filed a first and a second amended petition.

Certificates of Title and/or Powers of Attorneys with respect to the vehicles identified herein." Clearly the June 8 order requiring defendants to "perform any and all necessary other acts, if any, to cause the transfer of title of said vehicles" was within the relief requested and well within the issues plaintiff raised in its pleadings. The trial court did not abuse its discretion in awarding this relief.

■ Defendant finally argues under this point that because Count I was dismissed, nothing remained before the trial court and, therefore, the contempt proceeding to enforce the order after Count I was dismissed was a nullity. In support of this argument defendant cites cases holding a trial court has no further jurisdiction of a matter when the action has been dismissed. *See, e.g., Bell v. Kitt,* 655 S.W.2d 881, 883 (Mo.App.1983); *Hibdon v. Hibdon,* 589 S.W.2d 646, 648 (Mo.App.1979). However, the rule relied on in those cases applies only when the entire *action* has been dismissed. *Bell,* 655 S.W.2d at 883.

Without commenting on how this rule would otherwise apply, we observe that in this case, only one count of the petition was dismissed and, at the time of the dismissal, the action remained pending on the remaining count. Since the action was not dismissed, the court was not thereby deprived of jurisdiction. Point one is denied.

## II.

For his second point defendant argues that this is a criminal contempt proceeding which the trial court should have dismissed for lack of jurisdiction, and which was barred by the statute of limitations applicable to criminal contempt actions.

■ If defendant's contention is correct, his appeal must be dismissed because a judgment for criminal contempt cannot be appealed. *Teefey v. Teefey,* 533 S.W.2d 563, 565 (Mo. banc 1976). Rather, the appropriate remedy in that situation is a writ of habeas corpus or a writ of prohibition. *State ex rel. Burrell–El v. Autrey,* 752 S.W.2d 895, 901 (Mo.App.1988).

■ However, we find that this is a case of civil contempt and the appeal is properly before us. The main purpose of the contempt order was to "provide a coercive means to compel the other party to the litigation to comply with the relief granted to his adversary." *Chemical Fireproofing Corp. v. Bronska,* 553 S.W.2d 710, 714 (Mo.App.1977). Generally, civil proceedings are used to protect the party who is seeking the order, while criminal proceedings are used to protect the dignity of the court itself. *Id.* at 714–15. In this case the motion for contempt and the order were designed to assist and protect plaintiff.

Further, the order provided civil relief. Defendant was ordered incarcerated for an indeterminate period and could purge himself by following the order of the court. *See Jacoby v. Jacoby,* 675 S.W.2d 117, 120 (Mo.App.1984). Criminal contempt cases are distinguishable because contemnors are incarcerated for a fixed period. *Id.*

Because this is not a criminal contempt case, defendant's contentions relating to jurisdiction and the statute of limitations in a criminal contempt case do not apply. Point two is denied.

## III.

For his third point defendant argues that the trial court erred in admitting evidence of the sale of the Mercedes to Schwarz in 1990 for $22,500 when the Motion for Contempt charged that defendant had sold the Mercedes to Schwarz in 1988 for $24,000. Defendant asserts that plaintiff was thereby allowed to submit its case on a different theory and set of facts from those which were pleaded. In support of this point, defendant cites cases holding that evidence must conform to the pleadings.

In this case the motion for contempt alleged:

9. On or about December 22, 1988, Defendants Boghosian Motor, Paul Boghosian and John Boghosian sold the Mercedes to Erwin W. Schwartz, d/b/a Erwin W. Schwartz, Ltd. ("Schwartz") for the sale price of $24,000.00 by negotiating and endorsing the original Arkansas certificate of title to the Mercedes to Schwartz.

10. Defendants Boghosian Motor, Paul Boghosian and John Boghosian's aforesaid actions violated this Court's June 8, 1988, Order in that they sold and transferred a title to the Mercedes to Schwartz, they purposely, intentionally and maliciously failed to perform any and all necessary acts to cause the transfer of title of the Mercedes from Defendant Boghosian Motor to Plaintiff and said Defendants' actions constituted a willful, wanton, intentional and malicious disregard for this Court's Order.

11. At the time that this Court's June 8, 1988, Order was entered by consent between Plaintiff and Defendants Boghosian Motor, Paul Boghosian and John Boghosian, said Defendants knew and failed to disclose to Plaintiff and to this Court that they actually possessed and retained the aforesaid original Arkansas certificate of title to the Mercedes and, despite such knowledge, furnished to Plaintiff the aforesaid duplicate Arkansas certificate of title to the Mercedes with the intention of circumventing the Order.

The original certificate of title endorsed by Boghosian showing the sale to have occurred on December 22, 1988 was attached.

After filing its motion plaintiff discovered that defendant had backdated the title to show that the Mercedes was sold in December, 1988 when in fact it was sold in December, 1990. At the hearing plaintiff adduced evidence that the sale alleged to have occurred on December 22, 1988 and documented by defendant to have occurred on December 22, 1988 was transacted, but that the transaction in fact took place in December, 1990 and that defendant had backdated the title. The trial court did not err in allowing this evidence. The sale alleged was proven. The evidence that defendant sold the automobile on a date different from the date he documented the sale was relevant and was not outside the pleadings. Point three is denied.

## IV.

For his fourth point defendant argues that the trial court erred in ordering him to pay $54,099.50 and ordering him imprisoned until he paid that amount. He argues several reasons why this is error.

■ Defendant first asserts that the order was erroneous because the trial court failed to make an inquiry into his ability to pay. This argument misses the real issue. First, where ability to pay is an issue, such as where contempt is used to enforce a domestic relations judgment, the contemnor has the burden to prove inability to pay. *In re Marriage of Vanet,* 544 S.W.2d 236, 245–46 (Mo.App.1976). Second, the problem here is not the failure of proof on ability to pay but the use of contempt to enforce the payment of money. Defendant raises this issue in another subpoint which we address at the end of this section.

■ Defendant also argues that the judgment was in excess of the trial court's jurisdiction because the finding of contempt was based on the sale and negotiation of title documents to an automobile bearing VIN No. WD*B*CA35D6GA267606, whereas the automobile described in paragraph 7 of Count I of the petition was VIN No. WD*R*CA35D6GA267606. Defendant cannot rely on the typographical error in the petition. Paragraph 7 of Count I in the petition incorporated a photocopy of the certificate of title to this automobile which bore the correct vehicle identification number. The June 8, 1988 order referred to the vehicles identified in paragraph 7 of Count I of the petition. In the context of the petition, the attached exhibit, and the order, defendants could not have been misled by the typographical error in the text. Defendants in fact were not confused by the typographical error as John Boghosian and Boghosian Motor Co. supplied a power of attorney with respect to the Mercedes with the correct vehicle identification number in purported compliance with the June 8, 1988 order.

Defendant's final argument is that the trial court's order was in excess of its jurisdiction because contempt can only be used to compel compliance with a pre-existing obligation as set forth in an existing court order and the June 8 order did not create a monetary obligation.

The purpose of civil contempt is remedial. *Saab v. Saab,* 637 S.W.2d 790, 792 (Mo.App.1982).

> It is to provide a coercive means to compel the recalcitrant party to comply with relief granted to his adversary. [citation omitted] It is axiomatic that the trial court can exercise its contempt power only to compel the contemnor to comply with those obligations arising from the judgment or decree which the contemnor has in fact failed to perform.

*Id.* A civil contemnor may not be committed to jail for not doing something that he was not strictly required to do in the decree he was charged with violating. *Smith v. Smith,* 743 S.W.2d 476, 479 (Mo.App.1987). The June 8, 1988 decree required defendant to perform acts necessary to transfer title to the vehicle, but did not alternatively require defendant to pay money. Accordingly, he could not be committed to custody for not paying money. *Id.*[3]

Further, under the circumstances of this case, defendant could not be committed to custody for violating the June 8 order. We recognize that ordinarily a civil contemnor can be imprisoned for violation of a mandatory, as opposed to a prohibitory, injunction. *Chemical Fireproofing,* 553 S.W.2d at 714.

> If a civil contemnor violates a mandatory injunction which orders him to perform a certain act, and is thereafter imprisoned, he has the power to terminate his punishment by simply performing the act. In this sense he has the keys to the jail in his pocket. If a civil contemnor however, is imprisoned for violating a prohibitory injunction, which ordered him to refrain from the activity he has just performed, the imprisonment is not coercive but punitive since it is chastening him for acts already committed. In this situation the contemnor is not able to voluntarily terminate his imprisonment by performing some act and the other party does not benefit because it is too late for the imprisonment to be coercive. Cf. *Gompers v. Buck's*

*Stove & R. Co.,* 221 U.S. 418, 442, 31 S.Ct. 492, 498, 55 L.Ed. 797 (1910).

*Id.* at 714–15.

In this case defendant did violate a mandatory injunction which would theoretically subject him to imprisonment until he complied. However, in violating the injunction and in transferring title to the automobile to a third party, defendant made it impossible to terminate his punishment by transferring good title to plaintiff. Further, plaintiff cannot benefit from the imprisonment because it is too late for the imprisonment to be coercive. Accordingly, even though defendant violated a mandatory injunction, imprisonment is not an available remedy because it cannot coerce defendant into complying with the original court order.

As an alternative to commitment, the court may levy a compensatory fine against the violator payable to the plaintiff. *Smith,* 743 S.W.2d at 479; *R.E. Harrington, Inc. v. Frick,* 446 S.W.2d 845, 848 (Mo.App. 1969). Because a fine is intended to afford the plaintiff relief for his pecuniary injury, it must be related both to the actual monetary loss sustained by plaintiff and made payable to plaintiff. *Smith,* 743 S.W.2d at 479.

The trial court provided that defendant could purge himself of contempt by paying plaintiff $54,099.50, which the trial court calculated from the price of the Mercedes plus interest. Although plaintiff prayed for this amount as compensation for contempt, the trial court did not specifically award it as a compensatory fine, but as an amount to be paid to purge the contempt. On remand the trial court should make findings on whether a compensatory fine should be levied against defendant and, if so, the amount of pecuniary loss sustained by plaintiff and enter judgment in accord with those findings.

Accordingly, that portion of the judgment ordering defendant to be incarcerated until he purges himself of the contempt and providing that defendant may purge himself of the contempt by a cash payment (Paragraphs 2 and 3 of Order) is reversed. The cause is

---

**3.** Furthermore, if the original judgment had been a money judgment, contempt would not lie to enforce it. Section 511.340 RSMo 1986.

remanded to the trial court to make findings on whether a compensatory fine should be levied against defendant and, if so, the amount thereof and to enter judgment accordingly. In all other respects the judgment is affirmed.

KAROHL and CRAHAN, JJ., concur.